**INTERNATIONAL UNDERWRITERS, INC., a Delaware corporation, Defendant Below, Appellant,**

v.

**BLUE CROSS AND BLUE SHIELD OF DELAWARE, INC., a Delaware corporation, Plaintiff Below, Appellee,**

and

**Brian Lyle, Intervenor-Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted April 14, 1982.

Decided July 13, 1982.

Roy S. Shiels (argued) of Brown, Shiels & Chasanov, Dover, for appellant.

Thomas L. Ambro (argued) of Richards, Layton & Finger, Wilmington, for appellee.

Michael J. Goodrick of Theisen, Lank, Mulford & Goldberg, P. A., Wilmington, for intervenor-appellee.

Before QUILLEN, HORSEY, JJ., and HARTNETT, Vice Chancellor.

HORSEY, Justice:

The issue in this appeal is whether Delaware's No-Fault Statute, 21 *Del.C.* § 2118, may be reasonably construed as barring a subrogation claim by a health carrier against a no-fault carrier for reimbursement, within no-fault policy limits, of covered medical expenses of both carriers' insured resulting from a motor vehicle accident.

Defendant International Underwriters, Inc. (International) a no-fault carrier, appeals a judgment awarded plaintiff Blue Cross and Blue Shield of Delaware, Inc. (Blue Cross), a health care carrier, based on a subrogation claim by Blue Cross for International's unexpended PIP policy coverage benefits for its injured insured.[1] International concedes that it would have no defense to a *direct* claim by its insured for payment of such expenses since they are clearly within its PIP coverage benefits. Nevertheless, International argues that an *indirect* claim by way of subrogation is barred by the language of 21 *Del.C.* § 2118(f). We agree with Superior Court's rejection of the argument and affirm the judgment below against International.

Edward J. Stahl, Jr. (Stahl) incurred substantial medical expenses from injuries in a motor vehicle collision attributed to the negligence of a third-party operator. At time of injury, International was Stahl's no-fault motor vehicle insurer (with coverage limits of $10,000) under Delaware's No-Fault Statute. Stahl's employer also carried general health care insurance for Stahl's benefit with Blue Cross.

Stahl filed a "PIP" suit in Superior Court against his carrier, International, to recover his medical expenses and lost earnings coverage benefits under the personal injury protection (PIP) provisions of his no-fault policy issued by International. Later, International paid Stahl $4,547.95 in settlement of his claim for lost earnings but left unresolved Stahl's claim for medical expenses. After Blue Cross paid Stahl's medical expenses under Stahl's health care Blue Cross coverage, Blue Cross was substituted for Stahl as the plaintiff and real party in interest in Stahl's suit against International.

Blue Cross' basis for substitution for Stahl was, of course, subrogation—contract or common law: that having paid Stahl's medical expenses, Blue Cross was subrogated to Stahl's right to recover such expenses from his no-fault PIP carrier, International.

---

1. Blue Cross was thereby only partially reimbursed for medical expense paid by Blue Cross under its health care policy insuring the injured party.

Blue Cross and International then stipulated that the amount of Blue Cross' subrogated claim against International was limited to $5,452.05 (International's PIP coverage benefits of $10,000 less $4,547.95 already paid Stahl by International for his lost wages). On admitted facts, Superior Court granted summary judgment for Blue Cross for the full amount of its claim.

■■■ Since International's argument for reversal is substantially the same as that made below, we quote from Superior Court's unreported decision stating International's contentions and the Court's reasons for rejecting them:

"International argues that under subsection (f) of 21 *Del.C.* § 2118[2] a 'no-fault' insurer has a subrogation right superior to that of a health care carrier, thus, Blue Cross has no right to be reimbursed by International for medical expenses paid to Stahl. Indeed, International contends that if the $4,547.95 it paid to Stahl were medical rather than wage payments, International would be entitled to reimbursement from Blue Cross.

In essence, International's argument is premised on the notion that the 'No-Fault' Insurance Law allows a 'no-fault' carrier to be subrogated to the rights of its insured against a health care carrier who has the duty to provide medical benefits. This same argument was raised and rejected in the Delaware case of *Givens v. Street*, Del.Super., 405 A.2d 704 (1979). *Givens* also involved a subrogation claim by Blue Cross against a no-fault insurer under its subrogee's P.I.P. coverage. In holding that the P.I.P. carrier had the primary obligation to pay medical bills under 21 *Del.C.* § 2118 Judge Tease ruled:

'[W]hen Blue Cross provides coverage and no-fault insurance is also available, then Blue Cross is, by its contract with its insured, in the same position as its insured.

\*   \*   \*   \*   \*   \*

The no-fault statute contains no provision which expressly or by implication abrogates the common law contractual right of Blue Cross to assert the same claim against State Farm which Givens could have.' (405 A.2d 706)

One of the primary objectives of the 'No-Fault' Insurance Law was to assure prompt payment to an injured party for medical expenses. *DeVincentis v. Maryland Casualty Company*, Del.Super., 325 A.2d 610 (1974). The practical effect of the statute is to prohibit insured plaintiffs from attempting to recover compensation for medical expenses or lost earnings from alleged tortfeasors by mandating that the proper plaintiffs for such damages are [no-fault] insurers who are '... "subrogated to the rights ... of the person for whom benefits are provided ..." under 21 Del.C. § 2118(f).' *Garr v. Clayville*, 71 F.R.D. 553, 555 (D.Del.1976). A fair reading of § 2118 indicates that it was not the intent of the 'No-Fault' Insurance Law to govern subrogation rights arising under comprehensive medical insurance contracts, other than those of no-fault carriers. I conclude that Blue Cross is not a 'no-fault' carrier within the meaning of § 2118 and is thus not governed by the subrogation provision of the statute."

*Accord, Givens v. Street, supra*, wherein the Court reached the same conclusion, that is, that insurance contract subrogation rights are not controlled or limited by § 2118(f):

"The no-fault statute cannot properly be construed as governing subrogation rights arising under insurance contracts not governed by the no-fault statute ..."

*Givens v. Street, supra*, 405 A.2d at 706.

We approve and adopt the foregoing as the proper construction of 21 *Del.C.* § 2118 and § 2118(f).

International's related argument that § 2118(f)'s subrogation grant to no-fault

---

**2.** Subsection (f) states in pertinent part as follows:

'(f) Insurers providing benefits described in paragraphs (1)–(4) of subsection (a) of this section shall be subrogated to the rights, including claims under any workmen's compensation law, of the person for whom benefits are provided, to the extent of the benefits so provided.'

carriers is so "broad" as to nullify any contractual or common law right of subrogation of a non-no-fault carrier which is adverse to the no-fault carrier is equally untenable. Merely because § 2118(f) does not specifically refer to health care carriers does not support International's construction of the statute as conferring on a no-fault carrier a "broad right to stand in the shoes" of its insured (Stahl) as to all derivative claims of the insured. This argument ignores the remaining provisions of § 2118(f) which expressly limit a no-fault carrier's right of subrogation.[3]

The plain language of § 2118(f) cannot be read as doing anything more than giving legislative recognition to a no-fault carrier's contractual or common law right to be subrogated to a claim of a no-fault insured whose no-fault benefits have been discharged by the carrier. The statute does nothing to diminish a no-fault carrier's liability to another carrier subrogated to the claim of a no-fault insured for recovery of no-fault policy benefits that have been prepaid, so to speak, by such other carrier, here, Blue Cross. Simply put, § 2118(f) has no limiting effect on the subrogated right of Blue Cross to recover Stahl's unexpended PIP policy benefits from International.

This result is consistent with the obvious purpose of Delaware's no-fault statute, § 2118: to impose on the no-fault carrier, here, International, not only primary but ultimate liability for the payment of Stahl's covered medical bills to the extent of International's unexpended PIP benefits. For

subsection (g) of § 2118[4] expressly denies to Stahl the right to seek recovery of his covered no-fault medical expenses from the third-party tortfeasor or his liability carrier. *Givens v. Street, supra.* It necessarily follows that Blue Cross as Stahl's subrogee is similarly barred from asserting such a claim and that International alone may recover such payments from the third-party tortfeasor or his carrier. Thus, our no-fault statute clearly requires International to reimburse Blue Cross to the extent of International's unexpended coverage liability to Stahl and leaves International as the exclusive party to seek ultimate recourse from the third-party tortfeasor or his carrier.

Affirmed.

---

3. Subparagraph (1) of subsection (f) provides:
"(1) Such subrogated rights shall be limited to the maximum amounts of the tort-feasor's liability insurance coverage available for the injured party, after the injured party's claim has been settled or otherwise resolved, except that the insurer providing benefits shall be indemnified by any workmen's compensation insurer obligation to make such payments to the injured party."
As Blue Cross correctly states, "paragraph (f)(1) limits the no-fault carriers' subrogated rights to the 'maximum amounts of the *tort-feasor's* insurance coverage available for the injured party ... [and] indemnifi[cation] by any *workmen's compensation insurer* obligated to make ... payments to the injured party.' "

4. Subsection (g) reads as follows:
"Any person eligible for benefits described in paragraph (2) or (3) of subsection (a) of this section [that is, medical expenses and lost earnings, respectively] other than an insurer in an action brought pursuant to subsection (f) of this section, is precluded from pleading or introducing into evidence in an action for damages against a tort-feasor those damages for which compensation is available under paragraph (2) or (3) of subsection (a) of this section without regard to any elective reductions in such coverage and whether or not such benefits are actually recoverable."