Cynthia K. HAYDE and J.H.N. Enterprises, d/b/a J–Z Printing System and Royal Insurance Company,

v.

Emily WOMACH, and Richard Womach, Respondents,

and

Nationwide Insurance Company, Appellant.

No. WD 36730.

Missouri Court of Appeals, Western District.

April 15, 1986.

Phillip S. Smith, Morris & Foust, Kansas City, for appellant.

Thomas M Bradshaw, Mark G. Camacho, Hoskins, King, McGannon & Hahn, Kansas City, for respondents.

Before TURNAGE, P.J., and DIXON and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This is an appeal from an interpleader action filed by Royal Insurance Company

(Royal), Cynthia K. Hayde, and J.H.N. Enterprises. Royal insured a vehicle driven by Hayde, who apparently was responsible for a collision with a vehicle driven by William Womach. The Womach's vehicle was insured by Nationwide Insurance Company (Nationwide) under a policy which included a no-fault provision. Nationwide paid benefits to the Womachs under the policy and asserted a subrogation lien against any insurance proceeds which Royal might pay to the Womachs. Royal has offered payment of its policy limits to the Womachs and filed this suit to determine whether the Womachs or Nationwide should receive the money in question. Therefore, the real contest on appeal is between Womach and Nationwide.

The sole issue before this court is whether a no-fault insurance carrier, which has paid out benefits to its insured, is entitled on a subrogation claim to proceeds from a settlement made by its insured with a third-party tort feasor.

The parties agreed to try this case to the court without a jury on a stipulated set of facts. On October 24, 1982, Emily Womach was a passenger in a Chrysler New Yorker operated by her husband, William Womach, on Interstate 435 in Jackson County, Missouri. The Womach vehicle was involved in an accident with a vehicle owned by J.H.N. Enterprises and operated by Hayde. As a result of the accident, Emily Womach received personal injuries and William Womach died. William was survived by Emily and his son, Richard.

Prior to the accident, Nationwide issued an automobile insurance policy on the Chrysler, the Womach vehicle, titled in the name of Buttonwood Corporation, a Delaware corporation. The policy provided no-fault benefits and was in force at the time of the accident. As a result of injuries sustained in the accident, the Womachs incurred medical and funeral expenses together with loss of income by Emily Womach and loss of use of the Womach automobile. Nationwide, pursuant to Delaware statute and the no-fault provision of the insurance contract, reimbursed the Womachs in the amount of $43,369.19 for the aforementioned items.

Royal insured the vehicle driven by Hayde. Royal determined to pay the Womachs the limits of the bodily injury liability coverage protection under the policy in the total sum of $600,000. When Nationwide paid the no-fault benefits to the Womachs, it notified Royal, Hayde, J.H.N. Enterprises, Emily, and Richard that it was asserting a subrogation lien in the amount of $43,369.19 on any proceeds paid to the Womachs by or on behalf of Hayde. As a result, Royal, J.H.N. Enterprises, and Hayde filed this petition for interpleader and deposited $43,369.19 into escrow with the Circuit Court administrator pending the court's determination of the Womach's and Nationwide's respective rights to the sum.

At trial, the Womachs contended that Nationwide had no valid personal injury subrogation lien on the $43,369.19 held in escrow because they had not received full and complete compensation in settling their claims with Royal, J.H.N. Enterprises, and Hayde. The Womachs presented two expert witnesses who gave evidence that the settlement value of Emily's personal injury claim and the claim for wrongful death of her husband exceeded the settlement recovery of $600,000. Both witnesses, Spencer Brown and Joe Amick, are Kansas City trial attorneys with extensive experience in personal injury cases. In their opinions, the settlement value of the Womach's claims ranged from $750,000 to $1,000,000.

Nationwide, however, asserted that, under the terms of the policy, its personal injury subrogation lien was valid, and it was entitled to payment of any amounts up to $43,369.19 which the Womachs received from Royal in settlement of their claims against Hayde. The trial court entered judgment for the Womachs for the full amount of $43,369.19. It determined Nationwide was not entitled to enforcement of its subrogation lien. The court concluded

the Womach's claim had a settlement value in excess of Royal's $600,000 policy limits and the $43,369.19 paid by Nationwide. Therefore, since the Womachs did not receive full compensation, they did not receive *duplicate* benefits in payments from Royal and Nationwide. From this judgment Nationwide appeals.

The judgment of the trial court in a court-tried case must be affirmed on review unless it erroneously declares or applies the law, is unsupported by substantial evidence or is against the weight of the evidence. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The parties agreed and the trial court concluded since the insurance contract between the Womachs and Nationwide was entered into in Delaware and since the Womach vehicle was registered in Delaware, the court was required to apply Delaware law to determine the rights and duties arising out of the insurance contract. *Brown v. Brown,* 678 S.W.2d 831, 833 (Mo.Ct.App.1984); *Nakao v. Nakao,* 602 S.W.2d 223, 226 (Mo.Ct.App.1980); *see also* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 188 (1971).

■ As of January 1, 1972, Delaware adopted a no-fault insurance plan. *See* Del.Code Ann. tit. 21 § 2118 (1970). The plan provided no-fault coverage for medical expenses, funeral expenses, and loss of earnings and replacement services expenses up to a specific amount. Del.Code Ann. tit. 21 § 2118(a)(2). A provision of the no-fault plan creates a subrogation right which vests in the paying insurer to the extent of benefits paid:

> (f) Insurers providing benefits described in paragraphs (1) through (4) of subsection (a) of this section shall be subrogated to the rights ... of the person for whom benefits are provided, to the extent of the benefits so provided.
>
> (1) Such subrogated rights shall be limited to the maximum amounts of the tortfeasor's liability insurance coverage available for the injured party, after the injured party's claim has been settled or otherwise resolved....

Del.Code Ann. tit. 21 § 2118(f) (1970).

The pertinent portion of the Nationwide policy reads as follows:

> 5. Subrogation
>
> We have the right of subrogation under the ... Personal Injury Protection ... coverages in this policy. This means that after paying a loss to you or others under this policy, we will have the insured's right to sue for or otherwise recover the loss from anyone else who may be held responsible. Alternatively, we may require *reimbursement* from the insured out of any settlement or judgment that *duplicates our payments.* These provisions will be applied in accordance with state law. (Emphasis added).

Neither this court nor the trial court or the parties involved has found Delaware case law dealing with the issue of whether a no-fault insurer who has paid personal injury protection benefits to its insured is entitled to reimbursement of the amount paid its insured when a third party tortfeasor agrees to pay policy limits in settlement. Therefore, the trial court's task was to determine how a Delaware court would interpret the applicable Delaware statute and the insurance contract under the facts in this case.

The Delaware cases which interpret § 2118(f) do little to shed light on the issue in this particular case. However, the Delaware Supreme Court has stated that the "plain language of § 2118(f) cannot be read as doing anything more than giving legislative recognition to a no-fault carrier's *contractual* or common law right to be subrogated to a claim of a no-fault insured whose no-fault benefits have been discharged by the carrier." *International Underwriters, Inc. v. Blue Cross and Blue Shield of Delaware, Inc.,* 449 A.2d 197, 200 (Del.1982) (emphasis added).

The interpretation given to the language of § 2118(f) by the Delaware Supreme Court thus prompts an examination of the subrogation language in the policy issued to the Womachs by Nationwide. In their briefs, the parties agree the statute does not acquire any independent controlling effect and the determination of the subrogation interest is governed by the insurance contract. *See Swezey v. Home Indemnity Co.,* 691 F.2d 163, 166 (3d Cir.1982).

The language in the subrogation clause of the insurance policy (set out above) which Judge O'Leary found determinative states "we may require reimbursement from the insured out of any settlement or judgment that *duplicates our payments.*" (Emphasis added). The court concluded the "intent of the parties was to allow reimbursement only if the insured received a double recovery." Applying the policy terms to the stipulated facts in the case and the testimony adduced at trial, the court concluded the Womach's claims had a settlement value in excess of Royal's $600,000 policy limits and the $43,369.19 paid by Nationwide, and the combined recoveries did not constitute duplicate payments.

Since no-fault insurance coverage is of fairly recent vintage, few jurisdictions have dealt with the subrogation issue presented in this case. Courts have gone both ways on the issue. *See* Annot. 69 A.L.R.3d 830 (1976). This court agrees with the trial court that the better reasoned approach seems to be that which holds that reimbursement is due to the no-fault carrier only if the insured has been completely compensated.

In *Pfeffer v. State Automobile and Casualty Underwriters Insurance Co.,* 292 N.W.2d 743 (Minn.1980), the no-fault carrier paid its policy limits of $30,000 to its insured. Damages were stipulated by the parties to be $125,000. When the liability carriers attempted to settle with the insured in the amount of $57,500, the no-fault carrier sought reimbursement of its $30,000 payment through a subrogation claim, which would have left the insured with a net recovery of $27,000. *Id.* at 744–45. The Minnesota Supreme Court held the no-fault insurer has no subrogation claim to the proceeds in a settlement made by the insured with a third-party tortfeasor where the insured was not fully compensated for injury. *Id.* at 749. The court noted that a major purpose of no-fault insurance was "to provide offsets *to avoid duplicate recovery.*" *Id.* at 747.

*Marquez v. Prudential Property and Casualty Insurance Co.,* 620 P.2d 29 (Colo. 1980), dealt with facts similar to the case at bar. There the no-fault carrier paid to its insured $12,366 in benefits and claimed a subrogation right to reimbursement of that amount. Thereafter, the liability carrier determined to pay its policy limits of $15,000 to the insured. The parties stipulated to damages of $30,000. *Id.* at 30. The Colorado Supreme Court stated that "even in those cases in which subrogation or reimbursement is allowed, the insurer's recovery cannot be permitted to reduce the funds to which the insured is entitled in order to obtain full compensation for his injuries." *Id.* at 32. The court concluded the proceeds from both the no-fault and liability coverage should be applied toward the damages the no-fault insured suffered and recognized subrogation is intended to prevent the insured from recovering twice for one injury. *Id.* at 33.

The fact that the liability carriers in *Pfeffer* and *Marquez, supra,* were offering settlements in amounts substantially less than the $600,000 offered by Royal in this case in no way diminishes the principles upon which the Colorado and Minnesota Supreme Courts reached their holdings. Missouri has recognized in cases of subrogation "where the aggregate of both sums recovered amounts only to payment of the loss in full, there is no double recovery by the insured for the one loss he has sustained, and therefore no violation of the principle upon which the doctrine of subrogation rests." *Home Ins. Co. of New York*

*v. Smith,* 140 S.W.2d 64, 67 (Mo.Ct.App. 1940). Thus, the trial court's judgment does not conflict with *Asel v. Order of United Commercial Travelers of America,* 197 S.W.2d 639 (Mo. banc 1946):

> "To insure the protection of state interest it is now recognized that a state may not be required to enforce in its own courts the terms of an insurance policy normally subject to the law of another state where such enforcement will conflict with the public policy of the state of the forum." *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316–19, 63 S.Ct. 602, 604–06, 87 L.Ed. 777 (1943).

*Id.* at 645 (quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316–17, 63 S.Ct. 602, 604–05, 87 L.Ed. 777 (1943)).

The judgment of the trial court is affirmed.

All concur.

DIXON, Judge, concurring in result.

I concur in the result of the majority opinion, but I do not concur in its statements or reasoning. My reasons for concurring in the result are as follows:

The majority opinion bases its analysis on a reading of the policy language. In my view, the policy language is irrelevant. The insurance agreement between the Womachs and Nationwide was issued pursuant to the provisions of the Delaware statute. The statute expressly provides that all policies written in Delaware for Delaware residents must at a minimum conform to the requirements of the statute. Del.Code Ann. tit. 21, § 2118(a)–(d) (Supp. 1984).[1] When a law is enacted which requires certain coverages as a matter of public policy and requires all policies written to have such coverages, the provisions of the statute become a part of the policy. Where a conflict arises between the statute

and the policy, the statutory provisions govern. *Shepard v. American States Insurance Co.,* 671 S.W.2d 777 (Mo. banc 1984); *Craig v. Iowa Kemper Mutual Insurance Co.,* 565 S.W.2d 716 (Mo.App. 1978); *Marquez v. Prudential Property and Casualty Insurance Co.,* 620 P.2d 29 (Colo.1980); *Canal Insurance Co. v. Sinclair,* 208 Kan. 753, 494 P.2d 1197 (1972); *Franey v. State Farm Mutual Automobile Insurance Co.,* 5 Ill.App.3d 1040, 285 N.E.2d 151 (1972).

The Nationwide policy provisions cannot provide a broader or different right of subrogation than the statutes permit. *International Underwriters, Inc. v. Blue Cross and Blue Shield of Delaware, Inc.,* 449 A.2d 197, 200 (Del.1982), does state that the language of "§ 2118(f) cannot be read as doing anything more than giving legislative recognition to a no-fault carrier's contractual or common law right to be subrogated to a claim of a no-fault insured whose no-fault benefits have been discharged by the carrier." That statement must be read in the context of the case, however, and the majority fails to do that.

In *International Underwriters* plaintiff Blue Cross sued defendant International Underwriters, the no-fault carrier for an injured insured. Blue Cross had provided medical benefits to the insured while International had paid no medical expenses on the insured's claim. Blue Cross brought the action under its own right to subrogate the insured's claim against International. The claim of International against the tortfeasor was not involved in the case.

International argued that under § 2118(f) a no-fault insurer has a subrogation right superior to that of a health care carrier. *International Underwriters,* 449 A.2d at 199. It was in response to that argument that the court made the statement the majority relies upon. The court specifically

---

**1.** All statutory references hereafter will be by Section number to Title 21 of the Delaware Code.

recognized that the provisions of § 2118(f) "expressly limit a no-fault carrier's right of subrogation." *Id.* at 200.

It is this express limitation of the right of subrogation contained in the statute creating the right of subrogation which controls and determines this case.

Section 2118(f) reads as follows:

(f) Insurers providing benefits described in paragraphs (1) through (4) of subsection (a) of this section shall be subrogated to the rights, including claims under any workmen's compensation law, of the person for whom benefits are provided, to the extent of the benefits so provided.

The very next subparagraph 2118(f)(1) provides as follows:

(1) *Such subrogated rights shall be limited to the maximum amounts of the tortfeasor's liability insurance coverage available for the injured party, after the injured party's claim has been settled or otherwise resolved,* ....

(Emphasis added).

This language clearly and unambiguously provides that the subrogation right is *limited* to the amount of coverage after settlement or resolution of the claim. In the instant case, there was no "tortfeasor's liability coverage" remaining after Womach's claim was settled. There was no right of subrogation remaining in Nationwide.

If there were any doubt as to the legislative intent contained in Section 2118(f)(1), it would be dispelled by the following language from Section 2118(f)(5):

(5) Nothing contained herein shall prohibit a liability insurer from paying the subrogated claim of another insurer prior to the settlement or resolution of the injured party's claim. However, should the amount of such settlement or resolution, in addition to the amount of any subrogated claim, exceed the maximum amount for the tortfeasor's liability insurance coverage available for the injured party, then any insurer who has been paid its subrogated claim shall reimburse the tortfeasor's liability insurer that portion of the claim exceeding the maximum amount of the tortfeasor's liability insurance coverage available for the injured party.

Furthermore Section 2118(g) says that the injured person eligible for benefits under the statute "is precluded from pleading or introducing into evidence in an action for damages against a tortfeasor those damages for which compensation is available under paragraph (2) or (3) of subsection (a) of this section."

That last quoted section eliminates any question of double recovery by the injured person. No such issue exists under the Delaware law and the discussion in the majority opinion of duplicate payments has no relevancy. The Florida, Minnesota, and Colorado cases cited arise under statutes entirely different from the Delaware statute.

I concur in the result.