**William WILLIS, Sr., Edna V. Willis and Willis Chevrolet, Inc., a Delaware corporation, Plaintiffs,**

v.

**CONTINENTAL CASUALTY COMPANY and CNA Insurance Companies, foreign entities, Defendants.**

**Civ. A. No. 85–445 MMS.**

United States District Court, D. Delaware.

Dec. 10, 1986.

Harold Schmittinger and William D. Fletcher, Jr., of Schmittinger & Rodriguez, P.A., Dover, Del., for plaintiffs.

Mason E. Turner, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendants.

MURRAY M. SCHWARTZ, Chief Judge.

This diversity action arises from a dispute between plaintiffs William Willis, Sr., his wife, Edna, and Willis Chevrolet, Inc. ("Willis Chevrolet") and their no-fault automobile insurers, Continental Casualty Co. and CNA Insurance Companies ("CNA"), concerning the defendant's liability for lost wages under a PIP policy. Plaintiffs have moved for summary judgment on Count I of the complaint, asking the court to find CNA liable on the policy as a matter of

law. Advancing alternative theories, they argue that either Willis Chevrolet has been subrogated to its employees' claims for lost earnings, or under the "collateral source" doctrine Mr. and Mrs. Willis may recover directly from CNA. The motion of Willis Chevrolet will be denied because a material factual issue remains for trial. However, the alternative motion of Mr. and Mrs. Willis will be granted.

## FACTS

Willis Chevrolet purchased a one-year insurance policy from CNA in August, 1983, with standard and added personal injury coverage totaling $110,000 per person and $320,000 per accident. Docket ("Dkt.") 1, Exhibit A. Delaware's mandatory no-fault law, 21 *Del.C.* § 2118 ("§ 2118"), requires coverage for medical expenses, funeral expenses, loss of earnings, and substitute service expenses. Willis Chevrolet paid the $8601 premium, and was the named insured along with William Willis. Willis Chevrolet, a new and used car dealership, is a close corporation, owned by William Willis, Sr., and his two sons. William Willis, Sr., was president and general manager of the dealership until he retired in September, 1985; Edna Willis worked part-time as a bookkeeper.

On November 11, 1983, Mr. and Mrs. Willis were severely injured in a motor vehicle accident. Mr. Willis was hospitalized until April, 1984, and has subsequently undergone further operations and treatment. Mrs. Willis was also hospitalized for a substantial period. CNA fully paid all medical expenses. Both returned to work in April, 1984, although Mr. Willis did so on a limited basis for a number of months. During the period of their disability, Willis Chevrolet continued to pay their full salaries which totaled $155,491.40 for Mr. Willis and $2,557.72 for Mrs. Willis. The company did not hire replacements during their convalescence, and never informed CNA that the salaries were being paid. The decision to continue paying the Willis' salaries was never presented to a corporate

officer or formally approved by the corporation.

Prior to the accident, Willis Chevrolet had continued wage payments to eight disabled employees for periods ranging from three to 27 weeks. There was no written policy of continuing salaries, and the authorization was made by Mr. Willis, based on his assessment of the value and experience of the employee.

On November 29, 1984, plaintiffs requested reimbursement from CNA for lost wages, up to the policy limit of $110,000 in the case of Mr. Willis. Defendant denied the request on June 6, 1985, after which plaintiffs brought suit in this Court.

## ANALYSIS

Because this action arises under the Court's diversity jurisdiction, 28 U.S.C. § 1332, the Court is required to apply the law of the forum state to the parties' claims. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Delaware state law on subrogation and the collateral source rule will control the outcome.

### I. *Subrogation*

Plaintiffs' first argument is founded on the traditional equitable principle of subrogation: "... the substitution of one person in the place of another with reference to a lawful claim or right." 73 Am.Jur.2d *Subrogation*, § 1. Willis Chevrolet asserts that it has been subrogated to the rights of Mr. and Mrs. Willis to recover for lost wages under the CNA insurance policy. The subrogation right arises from the company's policy of continuing salaries for disabled employees. According to Willis Chevrolet, this policy created an enforceable contract right against it by Mr. and Mrs. Willis, and therefore it was bound to pay their wages during the term of disability. Because they would have been able to claim lost earnings from CNA in the absence of the Willis Chevrolet personnel policy, the company argues it should be allowed to assume Mr. and Mrs. Willis' rights

against the insurer to recoup the wage payments.

Delaware courts have long recognized that "[s]ubrogation is a creature of equity, historically cognizable in our Court of Chancery." *Phillips v. Liberty Mutual Insur. Co.*, 43 Del.Ch. 436, 235 A.2d 835, 838 (1967). The subrogation right is triggered when a person pays off the debt or satisfies the claim of a second person. Although not a party to the original transaction, subrogation allows "the equitable substitution of another person in the place of the lienholder or preferred claimant to whose original rights he succeeds in relation to the claim paid." *Olivere v. Taylor*, 31 Del.Ch. 53, 65 A.2d 723, 726 (1949) (Chancellor Harrington). "The right of a person making such an advance to subrogation depends on: (1) his being secondarily liable, or (2) the necessity of acting to protect his own interests, or (3) an agreement that he is to have security." 73 Am. Jur.2d *Subrogation*, § 11.

Although Delaware courts accept the subrogation doctrine, the state's no-fault statute also governs the insurance policy, which may affect application of the common law subrogation right. Section 2118(f) provides insurers a right of subrogation to the claims of the insured against the tortfeasor, up to the policy limits, but is silent with respect to a third party's subrogation rights as against the no-fault insurer. Defendants argue the statute's failure to explicitly grant third parties the right to bring subrogated claims bars Willis Chevrolet's suit.

The Delaware Supreme Court has considered two cases involving third party subrogation claims against no-fault insurers, but neither case directly addressed the factual circumstance of an employer's subrogation claim for payment of lost wages to an injured employee. The Court is mindful that "the State's highest court is the best authority on its own law," *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886, and those decisions provide important guidance in analyzing plaintiffs' subrogation claim.

In *International Underwriters v. Blue Cross*, 449 A.2d 197 (Del.Supr.1982), Blue Cross paid the insured under a general health care policy. A no-fault insurance policy providing payment for medical expenses, written by International Underwriters, also covered the insured. After Blue Cross paid the medical expenses, it asserted a subrogated claim against International Underwriters for reimbursement. International Underwriters argued that § 2118(f) granted no-fault insurers exclusive rights to be subrogated to an insured's claims, thereby barring third parties from asserting subrogated claims against a no-fault insurer. *Id.* at 198. The Delaware Supreme Court squarely rejected that argument, holding the no-fault insurer is ultimately liable for all of the insured's claims without reference to whether they are asserted by the insured or a subrogee. *Id.* at 200.

In *State Farm Mut. Auto. Ins. v. Kulow*, 483 A.2d 1121 (Del.Supr.1984), two members of the armed forces and their wives sued a no-fault carrier on behalf of the United States to recover the cost of their medical care. The injured persons, as military employees, were entitled to receive free medical services from the government. State Farm argued that, under the insurance policy and § 2118, it was liable only for the insured's out-of-pocket expenses "incurred," which were non-existent. *Id.* at 1124. The Delaware Supreme Court rejected that argument, holding that the insured need not be personally liable for the cost of treatment for those expenses to be "incurred" and thereby recoverable from the no-fault insurer.

*Kulow* and *International Underwriters* resolve two important questions regarding Willis Chevrolet's subrogation claim. First, a third party as the subrogee of the insured can successfully sue a no-fault insurer. Second, th insured person need not be directly liable for the claimed expense so long as that person would have incurred the expense but for the payment by the subrogee. The two cases also establish an important guideline concerning the

relationship between the insured and the subrogee. In *Kulow*, the Court states, "There is no appreciable difference between Blue Cross' *contractual obligation* to pay medical costs in that case and the *statutorily mandated obligation* of the federal government to pay the plaintiff-insured's medical costs in this case." 483 A.2d at 1124 (emphasis supplied). The Delaware Supreme Court's focus on the obligation the subrogee owes to compensate the insured, even with the availability of no-fault insurance, presents this Court with a pivotal fact that must be ascertained in reviewing Willis Chevrolet's subrogation claim.

Willis Chevrolet argues that the company's "longstanding policy" was to continue the salaries of certain valuable employees who were disabled. It points to eight employees who received their wages despite being disabled. *See* Dkt. 25A at 10. Plaintiff asserts that Mr. and Mrs. Willis were two of the most important employees of the company, and therefore the company simply continued to implement its wage continuation policy with these two employees without any need for formal corporate authorization.

Defendants argue that Willis Chevrolet's "policy" was based on ad hoc, haphazard decisions by Mr. Willis, made without benefit of a written formulation or guidelines. Instead of being a legally enforceable obligation, defendants contend that the wage payments were voluntary gratuities. Under traditional subrogation doctrine, "the party making payment is a volunteer if, in so doing, he has no right or interest to protect, and acts without obligation ..." 73 Am.Jr.2d *Subrogation*, § 24. Once characterized as a volunteer, that person has no subrogation right to recover the expenses paid to the injured person from a third party. *Id.* § 23. Defendants point to the fact that there was no formal corporate authorization for continuing the salaries of Mr. and Mrs. Willis as evidence that there was no enforceable obligation to pay their wages. *See* Dkt. 27A at 15.

Plaintiffs' motion is for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, and the Court can only grant the motion if it is "show[n] there is no material issue of fact...." Plaintiff bears the burden of showing the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and all inferences of fact must be drawn in the light most favorable to the non-moving party. The Court, as a threshold matter, determines if "there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see Graham v. F.B. Leopold Co.*, 779 F.2d 170, 173 (3d Cir.1985).

■ The import of *Kulow* and *International Underwriters* requires that the Court find an enforceable obligation, analogous to the statutory and contractual duties in those cases, before it can allow a third party subrogated claim against the no-fault insurer under 21 *Del.C.* § 2118.[1] The record is deficient regarding the enforceability of Mr. and Mrs. Willis' right to the wage continuation program because Willis Chevrolet has failed to show the scope, duration, or parameters of the plan. This failure to provide an adequate factual record bars the Court from granting summary judgment in favor of Willis Chevrolet because it has not been established, as a matter of law, that such an obligation ex-

---

1. The Delaware Supreme Court has dealt with an employer's claim against an insurance carrier to recover payments for medical expenses and wages to injured employees in *Frank Sparks Co. v. Huber Baking Co.,* 9 Terry 9, 48 Del. 9, 96 A.2d 456 (1953). That case involved a Worker's Compensation claim, and Sparks Co. argued that it was required by an implied contract to pay it injured employees their lost wages. Sparks Co. sought to recover those payments from its insurance carrier, but the Court granted summary judgment against the employer because there was unrefuted evidence that it had no duty to pay its employees' wages above the level required by statute. *Id.* 96 A.2d at 459. The present case is similar, only now there is a factual dispute over whether an enforceable obligation exists.

isted. "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982).[2] Summary judgment on plaintiffs' subrogation theory will be denied.

## II. *Collateral Source*

■ Plaintiffs urge an alternative position. They argue the collateral source rule allows recovery under the CNA insurance policy if the Court finds no enforceable obligation to pay the salaries by Willis Chevrolet. The argument focuses on the traditional tort law doctrine that benefits received from a third party not related to the defendant may not be used to reduce damages otherwise recoverable from a tortfeasor. *See* Am.Jur.2d *Damages,* § 206. Mr. and Mrs. Willis assert the wage payments were received from a collateral source and do not affect their claims under the insurance policy.

Plaintiffs argue that the no-fault statute has not affected the rule where the injured victim sues the insurer. The statute substitutes the insurer for the tort-feasor, subjecting the carrier to *all* tort liabilities, up to the limits of the policy, including the collateral source rule. To hold otherwise would permit insurers to avoid paying benefits for which they are contractually obligated while also protecting tortfeasors from liability under the special damages limitation of the no-fault statute.[3] Finally, permitting application of the rule in suits between injured parties and their no-fault carriers would not harm the insurer because its subrogation right in § 2118(f) will make the tortfeasor ultimately liable, which is the intent of the rule.

Defendants make three arguments why the collateral source rule should not apply in this context. First, plaintiffs will receive a double recovery if insurers are not permitted to introduce evidence of collateral benefits. Second, the effect of having to pay those already compensated will raise the cost of providing insurance without providing any benefit to society. If payment could be withheld from claimants with collateral source benefits, then insurance premiums would be lower for the general population. Third, the collateral source rule increases the possibility of fraud on the part of plaintiffs by encouraging them to seek double recoveries. The added costs created by this incentive will be passed on to the public, which is required to purchase no-fault coverage.

The Delaware no-fault statute and Delaware Supreme Court decisions do not address the fact complex where an injured person receives benefits from a collateral source that has no subrogation right, and payments were not mandated by the worker's compensation law. Therefore, this Court must predict how the Delaware Supreme Court would resolve the issue. *Rabatin v. Columbus Lines, Inc.,* 790 F.2d 22, 24 (3d Cir.1986). In this regard, the United States Court of Appeals for the Third Circuit has stated:

> In attempting to forecast state law, we 'must consider relevant state precedents, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue.' *McKenna* [*v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir.1980)]. We bear in mind, too, that we should not accord to any particular 'datum' more significance than would the [Delaware]

2. Defendants also argue in a footnote to their brief that the amount of the salary Mr. Willis was entitled to is less than what he was paid. Defendants assert that there is a distinction between base salary, or "draw," and bonuses paid to an employee, for the purpose of determining the lost earnings recoverable under the no-fault policy. *See United States Fidelity & Guar. Co. v. Neighbors,* 421 A.2d 888 (Del.Supr.1980). Plaintiffs argue that lost wages include regular bo-

nuses which have been awarded in similar sums in previous years. This additional factual dispute prevents the Court from entering summary judgment on the amount of lost wages recoverable under the CNA policy.

3. *See infra,* Pt. II. 4, for a detailed analysis of the damages limitation in 21 *Del.C.* § 2118(g).

Supreme Court under similar circumstances.

*McGowan v. University of Scranton,* 759 F.2d 287, 291 (3d Cir.1985). The parties have cited two unpublished opinions from the Delaware Superior Court with conflicting results on the availability of the collateral source rule in a suit against a no-fault insurer. *Dickerson v. Continental Casualty Co.,* Civ. A. No. 82C–MR–8 (Del.Super. Sept. 1, 1983) [Dkt. 25JA at 25]; *Freeman v. Allstate Insurance Co.,* Civ. A. No. 42 (Del.Super. Nov. 19, 1973) [Dkt. 27A at 27].

The Court will begin by reviewing the context of the present case, and then examine the conflicting Superior Court decisions. The policies underlying the collateral source doctrine and the no-fault legislation will then be examined as an aid in predicting whether the Delaware Supreme Court would apply the collateral source rule in suits between injured plaintiffs and their no-fault insurers.

### 1. *Context*

The present matter arises in a narrow but important area not explicitly governed by the no-fault statute and Delaware Supreme Court decisions. When a person sustains injuries in an automobile accident, collateral source payments will generally come from a health insurance policy. If that person is also temporarily disabled, and the injury occurred in the course of employment, then worker's compensation coverage will provide for any lost wages up to a predetermined amount. There is, necessarily, a degree of overlap between the coverage provided by health insurance and worker's compensation on the one hand, and no-fault insurance on the other.

*Kulow* and *International Underwriters* allow a subrogated collateral source to assert claims against the no-fault carrier. The rationale of those decisions is that the no-fault insurer is ultimately liable for the costs of the injuries, *Kulow,* 483 A.2d at 1124, and therefore the no-fault insurer

remains responsible for payments made by the collateral source. Similarly, § 2118(g) bars a no-fault policy from excluding coverage for amounts payable under the worker's compensation statute to an injured person. The statute and decisions effectively coordinate the claims of a collateral source and the no-fault insurer by imposing ultimate liability on the latter. Section 2118(f) then protects the no-fault carrier by granting it a subrogation right against the tortfeasor to the extent of any benefits paid, including worker's compensation benefits.

An open question under the statute is presented where a non-subrogated collateral source provides benefits and the payments do not fall within the worker's compensation statute.[4] Without a subrogation right, *Kulow* and *International Underwriters* are inapposite, and if the injury occurred outside the course of employment, § 2118(g) is also inapplicable. The question is whether that injured person could claim no-fault lost wage benefits when payment has been made by the collateral source.

### 2. *Superior Court Cases*

The Delaware Superior Court has considered the collateral source rule on two occasions in contexts similar to that outlined above. In *Freeman v. Allstate Insurance Co.,* Civ. A. No. 42 (Nov. 19, 1973), plaintiff received her salary as sick leave benefits from the employer. Plaintiff then sought lost wage benefits from her no-fault insurer, arguing that the carrier was subject to all of the tortfeasor's liabilities, including the collateral source rule. The Superior Court's brief opinion rejects the argument and holds that plaintiff cannot recover from the no-fault carrier because there has been no actual loss, a prerequisite for recovery under the policy.

In *Dickerson v. Continental Casualty Co.,* Civ. A. No. 82C–MR–8 Sept. 1, 1983), plaintiff's son had been injured in an automobile mishap. General health insurance

---

**4.** A prime example would be a corporate disability program with a wage continuation plan that does not provide the employer with a subroga-

tion right. It is conceivable that the program would explicitly repudiate subrogation for the injured person's claim.

purchased through plaintiff's employer paid the medical expenses, but did not provide the insurer with a subrogation right. Plaintiff then sought to recover under his no-fault policy. The Superior Court held that the collateral source rule applied to bar the no-fault carrier from introducing evidence of benefits received under the health insurance policy. It stated:

> ... the petitioner in the instant action can not stand in a worse position than a health insurance provider which could have been subrogated to all of the petitioner's rights had there been a subrogation provision in petitioner's contract. Moreover, the no-fault statue [sic] lacks any provision prohibiting the petitioner from securing benefits from a collateral source and at the same time securing benefits pursuant to no-fault coverage. The lack of any statutory prohibition in this regard exists against the backdrop of the holding in *Yarrington v. Thornburg*, Del.Supr. [8 Storey 152, 58 Del. 152], 205 A.2d 1 (1964) adopting the collateral source rule in Delaware. Although the application of the collateral source rule as articulated in *Yarrington* deals with the rights of an injured person *vis-a-vis* tortfeasor, the rationale of the rule is persuasive in the instant case in the absence of any clear legislative prohibition to the contrary.

*Id.* at 6–7.

These lower court opinions are diametrically opposed, and do not provide definitive guidance regarding how the Delaware Supreme Court would rule. The Court believes under all the circumstances that the Delaware Supreme Court would examine the policies supporting the collateral source rule and the enactment of the no-fault system to determine if they can be reconciled.

### 3. *Policies*

Delaware's no-fault statute does not explicitly create a comprehensive rule regarding collateral source payments.[5] Section 2118(g) does limit the application of the rule to a certain extent. It states,

> Any person eligible for [no-fault] benefits ... other than an insurer in an action brought pursuant to subsection (f) of this section, is precluded from pleading or introducing into evidence in an action for damages against a tortfeasor those damages for which compensation is available under paragraph (2) or (3) of subsection (a) of this section without regard to any elective reductions in such coverage and whether or not such benefits are actually recoverable.

This section repudiates the collateral source rule, up to the limits of the no-fault policy, in suits by injured persons against tortfeasors.

The statute does not completely abrogate the wrongdoer's tort liability, but it does interpose the no-fault carrier for the tortfeasor to the policy's limits. "The spirit, if not the letter of the no-fault statute encourages the injured party to seek redress from his own carrier for special damages ... as a method of avoiding litigation...." *Webster v. State Farm Mut. Auto. Ins.*, 348 A.2d 329, 332 (Del.Super.1975). The policies supporting the collateral source rule and the statute apply to different aspects of tort liability. Those policies will be examined in greater detail.

### a. *Collateral Source*

The Delaware Supreme Court adopted the collateral source rule in *Yarrington v. Thornburg*, 8 Storey 152, 58 Del. 152, 205

---

5. The reconciliation of the collateral source doctrine and no-fault insurance has been done statutorily by other states, with differing results. For example, the Florida legislature has mandated that courts admit into evidence all collateral source payments, including benefits received under "Any contractual or voluntary wage continuation plan...." Fla.Stat. § 627.-7372. Maryland adopted the opposite approach, barring the reduction of no-fault benefits if a collateral source provides payments, including wage continuation plans. Md.Ins.Code Ann. Art. 48A, § 540. The statute balances out the exclusionary effect of the rule by permitting insurers to coordinate policies to provide for nonduplication of benefits. *Id.* Texas also requires that no-fault compensation be paid without regard to any collateral source, including wage continuation benefits. Tex.Ins.Code Ann. § 5.06–3(c).

A.2d 1 (1964), where it held, "The collateral source doctrine is predicated upon the theory that a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant." *Id.* 205 A.2d at 2. Whether collateral source payments or services received by the victim are gratuitous or result from a prior contractual relationship, such as insurance, their source is immaterial in calculating the damages owed by the tortfeasor.[6] The focus is on the transaction between the plaintiff and defendant, and any receipt of assistance before or after the tortious act is irrelevant.

The payment of lost wages to a disabled employee by the employer comes squarely under the rule. In *Campbell v. Brandenburger*, 5 W.W.Harr. 203, 35 Del. 203, 162 A. 354 (1932), which the Delaware Supreme Court cited in *Yarrington*, the Superior Court stated:

> ... the mere fact that the [Sewer Department], by which the plaintiff was employed when he was injured, as a mere gratuity and without the performance of any services whatever by the plaintiff, or any understanding with him that such sums should be repaid, continued to give him an amount equivalent to his previous weekly wages during the whole period that he was unable to work, would not relieve the defendant of his liability to reimburse plaintiff for such actual loss of time and wages as were caused by the defendant's negligent act.

*Id.* 162 A. at 356; *see* 22 Am.Jur.2d *Damages*, § 208 ("wrongdoer can have no concern with the transaction between the employer and the employee").

**b.** *No-Fault*

In *DeVincentis v. Maryland Casualty Co.*, 325 A.2d 610 (Del.Super.1974), the Court stated,

One of the primary objectives of the no-fault insurance law was to assure prompt payment to an injured party for medical expenses and lost earnings and property damage. Thus, the insured party gained the economic benefit of immediate payment without awaiting protracted litigation.

*Id.* at 612. A second major policy supporting the no-fault system is the effect of lowering the cost of insurance by eliminating the legal expenses that arise from tort suits. *See* 12A *Couch on Insurance* § 45:661; *see generally Kiefer v. General Casualty Co. of Wisconsin*, 381 N.W.2d 205, 208 (N.D.1986) (cost of no-fault insurance is as important as its benefits).

**4.** *Reconciling Conflicting Policies*

The no-fault statute and the collateral source rule are both designed to further significant public policies. No-fault protects injured victims of automobile accidents by providing a system for quick, efficient compensation at a cost that is generally lower than under the traditional tort system. Collateral source also protects the injured victim by creating an incentive to completely protect oneself while denying the tortfeasor the right to reap any benefit from a wrongful act. In reconciling these policies, the Court must ascertain how the Delaware Supreme Court would resolve the question in light of the legislative intent in enacting the no-fault statute, the scope of the common law collateral source rule, and the impact the decision will have on the statutory scheme.

The collateral source doctrine is "firmly embedded in our law, and we recognize it to be the law of this State." *Yarrington*, 205 A.2d at 2. As part of the common law of Delaware, the rule is generally applicable unless the legislature has repudiated it. In reviewing a legislative enactment to determine if it overturns the common law, the Delaware Supreme Court has held that

---

**6.** Under the majority rule, the collateral source doctrine applies "regardless of whether such payments are made pursuant to a contractual obligation or as mere gratuities." Annot., 7 ALR 3d 516, 519. This application comports with the rationale stated by the Delaware Supreme Court in *Yarrington v. Thornburg*, 8 Storey 152, 58 Del. 152, 205 A.2d 1 (1964), that the tortfeasor has "no interest" in the method by which plaintiff received benefits.

"strict, rather than liberal construction of legislation in derogation of the common law is the rule." *Gibson v. Keith*, 492 A.2d 241, 247 (Del.Supr.1985); *State v. Brown*, 6 Storey 571, 195 A.2d 379, 383 (1963).

The no-fault statute permits the insured to recover special damages from the carrier, up to the policy limit. *Webster v. State Farm Mut. Auto. Ins. Co.*, 348 A.2d at 332. Section 2118(g) repudiates the collateral source rule for special damages in a suit between an injured victim and a tortfeasor, and the legislature has interposed the no-fault insurer for that tortfeasor. In the normal course insurers will pay the insured, and then pursue subrogated claims against tortfeasors and their insurers. In the event a victim's carrier refuses to pay, there does not appear to be any choice for the victim but to pursue the claim against the insurer and not the tortfeasor.

Section 2118(g) by its plain language precludes recovery of special damages from anyone other than the no-fault insurer, "... whether or not such benefits are actually recoverable" from the insurer. If the injured victim could not invoke the protection of the collateral source rule in seeking payment for special damages from the carrier, then the tortfeasor would also not be liable for any special damages under the § 2118(g) exclusion. This is the type of windfall the Delaware Supreme Court sought to shift to injured plaintiffs in *Yarrington*.

The collateral source rule was designed to protect plaintiffs in actions against tortfeasors, not their own insurers. If a plaintiff may invoke the collateral source rule in a suit against a no-fault insurer, it is an extension of the rule. However, allowing the no-fault insurer to raise as a defense collateral benefits paid to the insured, is even more troublesome than extending the collateral source doctrine. As noted above, § 2118(g) by its terms bars all persons who are "eligible for benefits" under the statute from seeking special damages from the tortfeasor, regardless of whether the benefits are actually recoverable. To permit

both the insurer and the tortfeasor to benefit under the subsection would mean that the legislature intended to deprive the injured plaintiff of any recovery when a collateral source provides benefits. Further, the no-fault carrier's liability, and ultimately the tortfeasors, will depend on whether the collateral source is subrogated to the injured party's claim. If a collateral source is not subrogated, an event entirely unrelated to the insurer or tortfeasor, then no liability could be imposed on either party; if it is subrogated, the insurer and tortfeasor would be liable.

The Delaware Supreme Court could avoid this outcome by interpreting the term "eligible" in § 2118(g) to exclude persons who receive collateral source benefits from non-subrogated third persons. Such an interpretation would allow a claim for special damages against the tortfeasor without reference to § 2118(g)'s limitation. The Delaware Superior Court achieved a similar result in *State v. Doordan*, Civ. A. No. 81C–MR2 (Del.Super. Oct. 29, 1982) (unreported opinion). The Superior Court considered plaintiff's claim against the tortfeasor for special damages where her no-fault policy explicitly excluded benefits provided through worker's compensation. The Superior Court held that "since plaintiff could not recover directly under the PIP policy ... § 2118(g) does not operate to bar evidence of those special damages for which PIP was not available." *Id.* Section 2118 at that time allowed insurers to exclude worker's compensation benefits from their policy coverage, and in response to *Doordan* the legislature amended § 2118(e) to bar such an exclusion. *See Jeffers v. Holmes & Richman Ice Cream Co.*, Civ. A. No. 83C–AP–18 (Del.Super. Oct. 18, 1985) (unreported opinion).

To reach a result similar to *Doordan*, the Delaware Supreme Court would have to read an exception into § 2118(g) by finding one class of plaintiffs not meeting the eligibility requirement. The effect of such an interpretation would be to alter the scope

of the section by now allowing special damage claims against tortfeasors where the clear intent of the legislature was to prevent that result. Furthermore, this implied exception runs counter to the policy of the no-fault statute by relieving the insurer of its ultimate liability to provide timely compensation for injuries.

Based upon the above, one may safely conclude the no-fault scheme created by the Delaware legislature does not adequately address the scope of the collateral source rule in suits between an injured person and a no-fault insurer. The Court has filled the void by weighing the policies supporting the rule and the statute, and examining the effects each alternative will have in an effort to predict how the Delaware Supreme Court would resolve the issue. I predict and hold that the Delaware Supreme Court would apply the collateral source rule to claims against no-fault insurers because this comports with the policy of protecting injured victims. Further, it does less violence to the statutory structure than would occur if the opposite result were adopted. Finally, this result coincides with the Superior Court's considered discussion of the question in *Dickerson v. Continental Casualty Co., supra.*[7]

### CONCLUSION

Plaintiffs' motion for summary judgment will be granted on the basis of the application of the collateral estoppel source rule to plaintiffs' claim. The motion for summary judgment insofar as it relates to Willis Chevrolet's subrogated claim will be denied because a material issue of fact is presented.

---

7. Defendants also argue that the terms of the insurance contract permit reimbursement only for amounts "actually lost." Dkt. 1, Exhibit A. They assert that Mr. and Mrs. Willis cannot prove any loss of income because of Willis Chevrolet's payments, and therefore the contract bars any recovery.

The Delaware Supreme Court disposed of the identical argument in *State Farm Mutual Ins. Co. v. Kulow*, where it stated, "... policy coverage must be coextensive with the minimum coverage required by statute." 483 A.2d at 1123. The Court held that the term "incurred" in 21 *Del.C.* § 2118(a)(2)a is not synonymous with "indebted," and the issue is whether costs have resulted from plaintiff's injury. *Id.* at 1124. *Kulow* requires that the defendants' argument be rejected. A loss directly attributable to plaintiffs' injuries was sustained, and therefore the no-fault insurer is liable under the policy.