Johnnie E. **MARQUEZ**, Petitioner,

v.

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Respondent,**

and

**American Standard Insurance Company of Wisconsin, Defendant.**

**No. C–1792.**

Supreme Court of Colorado.

Nov. 26, 1980.

We find all of those exceptions to be without merit, including those not addressed specifically in this opinion.

Norton Frickey & Associates, Dan W. Corson, Denver, for petitioner.

Burnett, Horan & Hilgers, Mike Hilgers, Denver, for respondent.

Joel H. Greenstein, Boulder, Branney & Hillyard, Neil A. Hillyard, Englewood, for amicus curiae, Colorado Trial Lawyers Association.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Sandra B. McCray, Asst. Atty. Gen., Denver, for amicus curiae, J. Richard Barnes, Ins. Com'r.

ERICKSON, Justice.

We granted certiorari to review *Marquez v. Prudential Property & Casualty Insurance Company*, 41 Colo.App. 478, 590 P.2d 75 (1978). We reverse the court of appeals and return this case with directions that the cause be remanded to the district court for the entry of a declaratory judgment in favor of the plaintiff, Johnnie E. Marquez.

The parties stipulated to the facts which provide the foundation for our decision. Marquez filed a civil action to recover damages for personal injuries which he suffered in an automobile collision. The reasonable value of the Marquez personal injury claim for injuries, disability, pain and suffering, medical bills, and loss of income was agreed to be $30,000. The negligence of Donna Marie Wright was the direct and proximate cause of his injuries.

Wright carried liability insurance with the American Standard Insurance Company of Wisconsin (American Standard). Marquez was insured by the defendant, Prudential Property & Casualty Insurance Company (Prudential). American Standard discharged its obligation to Wright by paying her $15,000 liability policy limits into the registry of the district court. Prudential paid Marquez $12,366.40 under policy provisions which provide no fault personal injury protection (PIP Benefits). Thereafter, a declaratory judgment proceeding was instituted by Marquez when Prudential indicated that it was entitled to recover the $12,366.40 paid to Marquez for PIP Benefits from the $15,000 deposited in the registry of the court by American Standard as Wright's policy limits for liability. Prudential based its claim for full reimbursement on section 10–4–713(1), C.R.S.1973 of the Colorado Auto Accident Reparations Act (No Fault Act), and the subrogation provision of Marquez's policy which states:

"In the event of any payment to any person under this coverage: The company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter...."

The district court entered a declaratory judgment granting Prudential the right to recover the PIP Benefits paid to Marquez from American Standard's $15,000 liability insurance deposit. The court of appeals, in interpreting section 10-4-713(1), C.R.S. 1973, affirmed the district court, except that the statutory section was declared to only permit recovery in excess of $500 of the PIP Benefits paid to Marquez. Thus, instead of receiving $27,366.40, Marquez recovered approximately one-half of the $30,-000 in damages which he suffered.[1]

■ The error made by both the district court and the court of appeals centers on their isolated reading of section 10-4-713(1), C.R.S.1973. The court of appeals' decision gives priority to the provider of PIP Benefits over the right of the injured insured and circumvents the purpose of the No Fault Act.

To resolve the issues which are before us, we must interpret various provisions of the No Fault Act which are in apparent conflict. The principles of statutory construction set forth in sections 2-4-201 and 2-4-203, C.R.S.1973, provide assistance. The No Fault Act must be read in its entirety to carry out the intention of the General Assembly. Section 2-4-201(1)(b). *See Travelers Indemnity v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976); *Humana v. Bd. of Adjustment*, 189 Colo. 79, 537 P.2d 741 (1975). Additionally, if a statute is ambiguous, the court, in determining the intention of the General Assembly, may consider legislative history. Section 2-4-203(1)(b).

The legislative history of the No Fault Act clarifies and reconciles the relationship between sections 10-4-713(1) (which prohibits tort recovery of direct benefits yet grants an insurer a direct cause of action against the alleged tortfeasor); 10-4-714 (which permits tort recovery of general damages by an insured); and 10-4-717 (which grants recovery rights by arbitration to an insurer).[2] From 1971 through 1973, a series of bills were introduced in the General Assembly relating to no fault insurance. An analysis of six of these bills, which focused on the recovery rights of the insurer and insured, indicates a legislative intent to allow an insured full tort recovery undiminished by the subrogation and arbitration right of his insurer, except in those cases where such a policy would result in double recovery to the insured. Likewise, there is nothing in the legislative history which indicates an intention to grant insurers concurrent, alternative recovery rights through subrogation and arbitration.[3]

Section 10-4-713(1), C.R.S.1973, under which this case was tried, provided:

"Neither any person eligible for direct benefits described in section 10-4-706(1)(b) to (1)(e) nor any insurer providing benefits described in section 10-4-706(1)(b) to (1)(e) shall have any right to recover against an owner, user, or operator of a motor vehicle or against any person or organization legally responsible for the acts or omissions of such person in any action for damages for benefits required to be paid under section 10-4-706(1)(b) to (1)(e), ... except that an

---

1. The record in the trial court indicates that the amount of PIP Benefits paid to Marquez by Prudential was $12,366.40 not $12,023.38 set forth by the court of appeals' opinion.

2. Section 10-4-713, C.R.S.1973, was amended, effective June 15, 1979, to limit a PIP insurer's direct cause of action against the alleged tortfeasor to those cases where legal liability exists on the part of a third person who is not an insured under a policy of automobile liability insurance issued by an insurer licensed to write automobile liability insurance in this state and when the injured person could recover in tort pursuant to section 10-4-714, C.R.S.1973. Colo.Sess. Laws 1979, ch. 75, 10-4-713 at 388.

Section 10-4-717, C.R.S.1973, has been amended to provide that the provisions of that section providing for arbitration, setoff, and reimbursement should not be construed so as to reduce the amount of liability insurance available to reasonably compensate an injured victim having a claim or cause of action under section 10-4-714, C.R.S.1973. Colo.Sess. Laws 1979, ch. 75, 10-4-717 at 389.

3. H.B. 1221, 48th G.A., 1st Sess. (1971); H.B. 1483, 48th G.A., 1st Sess. (1971); H.B. 1064, 48th G.A., 2nd Sess. (1972); S.B. 60, 48th G.A., 2nd Sess. (1972); S.B. 200, 49th G.A., 1st Sess. (1973); H.B. 1027, Colo.Sess. Laws 1973, ch. 94, 13-25-1, *et seq.* at 334.

insurer paying benefits under section 10–4–706(1)(b) to (1)(e) to or for any one person in excess of five hundred dollars shall have a direct cause of action against an alleged tortfeasor to the extent of benefits paid in excess of five hundred dollars and limited to the liability insurance coverage of the alleged tortfeasor...."

The court of appeals read the foregoing statute as giving the insurer an unqualified right to recover PIP Benefits already paid from the tortfeasor's insurance carrier at the expense of the insured who had not been paid damages for the injuries he suffered. We disagree. Section 10–4–717(1), C.R.S.1973, states:

"Every insurer licensed to write motor vehicle insurance in this state shall be deemed to have agreed, as a condition to maintaining such license after January 1, 1974:

(a) That, where its insured is or would be held legally liable for damages for bodily injury sustained by any persons to whom the benefits described in section 10–4–706(1)(b) to (1)(e) have been paid by another insurer, it will reimburse such other insurer to the extent of such benefits, subject to the limitations contained in section 10–4–713, but not in excess of the amount of damages so recoverable for the type of loss covered by such benefits or in excess of the limits of its liability under the policy; and

(b) That the issue of liability for such reimbursement and the amount thereof shall be decided by mandatory, binding intercompany arbitration procedures approved by the commissioner...."

Reading sections 10–4–713(1) and 10–4–717 together, it is clear that they were not intended to provide concurrent, alternative recovery rights to an insurer through subrogation or arbitration. An isolated reading would permit an insurer to recover an amount no greater than the liability insurance of the alleged tortfeasor under section 10–4–713, while section 10–4–717 limits the

insurer's recovery to the lesser of the following amounts in excess of $500 paid by the insurer under section 10–4–713(1): (a) the benefits paid by the insurer to its insured; (b) the limits of the alleged tortfeasor's PIP Benefits coverage; or (c) the limits of the alleged tortfeasor's liability coverage.

We conclude that the better interpretation of sections 10–4–713 and 10–4–717, is that arbitration is the sole means of recovery for an insurer unless the accident involves out–of–state insurers and vehicles, and the injured insured has a direct cause of action against the alleged tortfeasor under section 10–4–714, C.R.S.1973.[4]

In *Cirelli v. Ohio Casualty Insurance Company*, 72 N.J. 380, 371 A.2d 17 (1977), the New Jersey Supreme Court considered the validity of reimbursement and subrogation provisions in an automobile liability insurance policy with respect to personal injury benefits paid to the insured as required by the New Jersey No Fault Law. The court held that the reimbursement agreement was invalid insofar as New Jersey vehicles are concerned. Their determination was based upon the finding that the rationale of the No Fault Act was to eliminate subrogation rights among New Jersey carriers in an attempt to avoid the cumbersome and uneconomic shifting of dollars from one insurance carrier to another. *Cirelli v. Ohio Casualty Insurance Company, supra,* however, declared that where an accident occurs outside of New Jersey between a New Jersey vehicle and a vehicle from another jurisdiction, the reimbursement and subrogation provisions guard against double recovery of medical and other expenses which have been provided and paid for under PIP. But even in those cases in which subrogation or reimbursement is allowed, the insurer's recovery cannot be permitted to reduce the funds to which the insured is entitled in order to obtain full compensation for his injuries.

4. Our conclusion is consistent with subsequent amendments to the Colorado Auto Accident Reparations Act. Colo.Sess. Laws 1979, ch. 75, 10–4–713 at 388, and 10–4–717 at 389 n. 1.

Section 2–4–201, C.R.S.1973, states that in enacting a statute, it is presumed that a just and reasonable result is intended, and that public interest is favored over any private interest. In addition, section 2–4–203, C.R.S.1973, provides that if a statute is ambiguous, the court, in determining the intention of the General Assembly, may consider the object sought to be attained, the consequences of a particular construction, and the legislative declaration or purpose. The legislative purpose of the No Fault Act is set forth in section 10–4–702, C.R.S.1973:

> "The general assembly declares that its purpose in enacting this part 7 is to avoid inadequate compensation to victims of automobile accidents; to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or use of such vehicles...."

The holding of the court of appeals resulted in inadequate compensation to Marquez for his injuries and thus is contrary to both the legislative purpose of the No Fault Act and public policy. Both liability and no fault personal injury protection insurance play a role in effectuation of the legislative purpose. Section 10–4–706, C.R.S.1973, provides that the minimum coverages required for compliance with the statute are legal liability coverage for bodily injury or death in the amount of $15,000 to any one person in any one accident, and $30,000 to all persons in any one accident, and $5,000 for property damage in any one accident. The statute also provides for no fault personal injury protection in the amount of $25,000.

In the instant case, Marquez paid a premium for PIP coverage. Wright paid a premium to obtain liability coverage. Marquez's damages are stipulated to be $30,000, and the proceeds from both the PIP coverage and the liability coverage should be applied toward the damages he suffered. Any other interpretation does violence to the purpose of the Act. *See Georgia Farm Bureau Mutual Insurance Company v. Southeastern Fidelity Insurance Company,* 144 Ga.App. 811, 242 S.E.2d 743 (1978);

*Pennsylvania Manufacturers Association Insurance Company v. Government Employees Insurance Company (GEICO),* 136 N.J.Super. 491, 347 A.2d 5 (1975), aff'd. 72 N.J. 348, 370 A.2d 855 (1977); *Cirelli v. Ohio Casualty Insurance Company, supra; Kaup v. Western Casualty & Surety Company,* 432 F.Supp. 922 (D.C.Mont.1977).

■ Our interpretation of the No Fault Act is consistent with the principle that an insurer's right of subrogation is derived from the rights which its insured had, and is limited to those rights. *See, Skauge v. Mountain States Tel. & Tel. Co.,* 172 Mont. 521, 565 P.2d 628 (1977). Subrogation is intended to prevent the insured from recovering twice for one injury as would be the case if he could recover from both the insurer and from a third person who caused harm. G. Couch, *Cyclopedia of Insurance Law,* § 61:36 (2d ed. 1966); *Western Casualty and Surety Company v. Bowling,* 39 Colo.App. 357, 565 P.2d 970 (1977). Clearly then, any right of subrogation given to an insurer under section 10–4–713(1) must be interpreted to apply to those situations in which the insured has a direct cause of action against the alleged tortfeasor and his recovery thereunder could result in double recovery. Section 10–4–714, C.R.S.1973. Allowing Marquez to recover Wright's $15,000 in liability insurance nearly equals the stipulated damages; it is not a case of double recovery.

■ The court of appeals erroneously concluded that the subrogation language in Prudential's insurance contract was to be given preference over the express language and purpose of the No Fault Act. The insurance agreement between Marquez and Prudential is governed by the No Fault Act. The Act is incorporated as part of the insurance policy, and when conflict exists between the insurance policy and the statute, the latter governs. *Canal Insurance Company v. Sinclair,* 208 Kan. 753, 494 P.2d 1197 (1972); *Franey v. State Farm Mutual Automobile Ins. Co.,* 5 Ill.App.3d 1040, 285 N.E.2d 151 (1972). *See also, Union Mutual Life Company of Iowa v. Bailey,* 99 Colo. 570, 64 P.2d 1267 (1937).

**34**

Accordingly, the case is reversed and returned to the court of appeals with directions that the cause be remanded to the district court for the entry of a declaratory judgment in favor of the plaintiff, Johnnie E. Marquez.

ROVIRA and DUBOFSKY, JJ., do not participate.