**BLUE CROSS OF WESTERN NEW YORK and Blue Shield of Western New York, Petitioners,**

v.

**Shayla BUKULMEZ and Hertz Corporation, Respondents.**

No. 85SC241.

Supreme Court of Colorado, En Banc.

May 11, 1987.

Spurgeon, Haney & Howbert, P.C., Terence P. Fagan, Teresa A. Burkett, Colorado Springs, Holland & Hart, Gregory R. Piché, Denver, for petitioners.

Donald E. LaMora, Robert Dunlap, P.C., Colorado Springs, for respondent Shayla Bukulmez.

Anstine and Hill, Ronald C. Hill, Richard M. Kaudy, Denver, for respondent Hertz Corp.

VOLLACK, Justice.

The petitioners, Blue Cross of Western New York and Blue Shield of Western New York [hereinafter Blue Cross/Blue Shield], seek review of the court of appeals' decision reversing the trial court's award to Blue Cross/Blue Shield of no fault personal injury protection [hereinafter PIP] benefits from Hertz Corporation [hereinafter Hertz]. *Bukulmez v. Hertz Corp.*, 710 P.2d 1117 (Colo.App.1985).[1] We reverse the court of appeals regarding the right of Blue Cross/Blue Shield to subrogation in the amount of $23,825.57 from Hertz pursuant to section 10–4–706(1)(b), 4 C.R.S. (1973).[2] Hertz does not appeal its liability for PIP benefits.

---

1. We granted certiorari to consider the following: (1) whether plaintiff waived any objection to the admission of the affidavit accompanying Blue Cross/Blue Shield's motion for reconsideration, and was therefore barred from raising the issue on appeal; (2) whether the trial court, after rendering a judgment based on issues not raised by the parties at trial, has discretion to accept a supplemental affidavit on those issues attached to a timely motion for reconsideration; and (3) whether a plaintiff who has already received compensation for her injuries should be allowed double recovery under a New York insurance contract because the insurer, a corporation which does no business in Colorado, did not comply with Colorado procedural requirements for coordination of benefits, where the legislative policies behind both Colorado and New York laws would prohibit double recovery.

2. Section 10–4–706(1)(b) reads as follows:

Compensation without regard to fault, up to a limit of twenty-five thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical, chiropractic, optometric, podiatric, hospital, nursing, X-ray, dental, surgical, ambulance, and prosthetic services, and nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing, performed within three years after the accident for bodily injury arising out of the use or operation of a motor vehicle; except that there shall be offered to the insured, for the named insured and relatives of the named insured who reside in the same household as the named insured, at the option of the named insured, deductible provisions of one hundred dollars.

§ 10–4–706(1)(b), 4 C.R.S. (1973).

## I.

The parties to this case stipulated to the following facts. On September 1, 1980, the plaintiff, Shayla Bukulmez [hereinafter the plaintiff], was seriously injured in an accident while a passenger in a car owned by Hertz. The automobile in question was rented by James E. Hannon, Sr., and operated at the time of the accident by his son, who was then under the age of twenty-one. Under the rental agreement the son should not have been driving. The plaintiff brought suit against Hertz for failure to reimburse her for medical payments for treatment of her injuries. Hertz argued that a clause in the rental car agreement did not allow a person under the age of twenty-one to drive the rented vehicle, thus suspending any insurance coverage liability. On May 24, 1982, plaintiff moved for partial summary judgment on the issue of liability of Hertz for PIP benefits, under the Colorado Auto Accident Reparations Act [hereinafter No Fault Act]. §§ 10-4-701 to -723, 4 C.R.S. (1973). The trial court granted this motion on June 22, 1982. A court trial was set for October 25, 1982, for the remaining issues.

The plaintiff was a New York resident and, pursuant to a policy issued to her mother in New York, Blue Cross/Blue Shield paid $23,825.57 of plaintiff's medical expenses. Blue Cross/Blue Shield is a New York non-profit health services corporation, not qualified to do business in Colorado. On October 15, 1982, Blue Cross/Blue Shield moved to intervene and tendered a complaint for intervention in the action between the plaintiff and Hertz, pursuant to C.R.C.P. 24. Counsel for all parties stipulated to the intervention of Blue Cross/Blue Shield, provided the intervention would not affect the trial date of October 25, 1982. The court allowed Blue Cross/Blue Shield to intervene on the morning of trial. The parties agreed that Blue Cross/Blue Shield did not file notice of coordination of benefits with the Insurance Commissioner of Colorado, pursuant to section 10-4-709, 4 C.R.S. (1973).[3]

At the trial on October 25, 1982, stipulated facts were admitted into evidence. Hertz presented testimony by an employee relevant to its good faith defense to the plaintiff's charge of wanton and willful conduct by Hertz in refusing to pay PIP benefits. Exhibits offered by Hertz and Blue Cross/Blue Shield were admitted into evidence. The parties then argued matters of law in their closing statements. The plaintiff argued that Blue Cross/Blue Shield's failure to comply with the notice requirement of section 10-4-709 for coordination of benefits prevented Blue Cross/Blue Shield from recovering medical payments from Hertz. Blue Cross/Blue Shield contended that section 10-4-709 did not apply because Blue Cross/Blue Shield were not authorized to do business in Colorado and were providing benefits for a resident of New York under the laws of that state. In addition, Blue Cross/Blue Shield argued that they were entitled to recover the benefits paid to plaintiff under contract or equity principles of subrogation.

---

3. Section 10-4-709 states:

**Coordination of benefits.** (1) To avoid duplication of benefits available through other insurance or contract rights, providers of other benefits under sections 10-8-116 and 10-16-114 and article 17 of this title, are hereby required to coordinate such benefits with coverages required under section 10-4-106(1)(b) and (1)(c) and all providers of other benefits are expressly authorized to coordinate such benefits with coverages required under this part 7. The coordination of benefits provided in this subsection (1) shall apply to agreements entered into on or after April 1, 1974.

(2) Any provider of such other benefits which have been coordinated with coverages required under this part 7 shall file with the commissioner evidence that such coordination has resulted in an equitable reduction in premiums or costs to beneficiaries of such other insurance or contract rights.

(3) Providers of other benefits which have been coordinated with coverages required under this part 7 shall state in clear and conspicuous language in the contracts and descriptive materials by which such other benefits are conferred that such other benefits have been coordinated with minimum coverages under this part 7.

(4) Failure of compliance with either subsection (2) or subsection (3) of this section shall render any coordination of benefits by other providers unenforceable.

§ 10-4-709, 4 C.R.S. (1973).

At the close of argument, the trial court stated that it was "not requesting them but if counsel feels that they know of some other law that might be particularly helpful I would not mind being directed to it." On November 15, 1982, the trial court issued an order entitled "Order on Motions for Summary Judgment." The record reveals that no motions for summary judgment were pending before the trial court on October 25, 1982. The trial court ruled that section 10-4-709 was not applicable to Blue Cross/Blue Shield as New York corporations and further that the contract in question did not contain a provision for subrogation. The court stated that "intervenors' claim must be sustained or fail on the common law. The Court has been directed to no case holding, as a matter of law, that double recovery of medical insurance benefits is prohibited." The trial court denied Blue Cross/Blue Shield's prayer for relief contained in their complaint, finding "no legal rationale" to support subrogation. The trial court granted the plaintiff's prayer for relief for reasonable attorney's fees and interest, but dismissed her claim for treble damages against Hertz.

Blue Cross/Blue Shield submitted a motion for reconsideration on November 30, asserting their right to subrogation under the laws of New York State. The motion contained New York case law as authority and an affidavit by the secretary and corporate counsel of Blue Cross/Blue Shield [hereinafter the Fortunato affidavit]. This affidavit contained factual statements concerning the policy and referred to regulations promulgated by the New York State Department of Insurance. On January 26, 1983, a hearing was held on Blue Cross/Blue Shield's motion for reconsideration and the plaintiff's motion for entry of judgment and reconsideration of a portion of the court's order dealing with the issue of liability insurance coverage by Hertz. At this hearing, plaintiff's counsel stated, "We are now asking the court, in effect, for a *rehearing of the legal argument* that was made on October 25 and I don't have any objection to their coming into this case and *procedurally I have no objection to this court deciding who it is Hertz ought*

*to pay."* (Emphasis added.) Plaintiff's counsel again argued the applicability of section 10-4-709, relying on *Newton v. Nationwide Mut. Fire Ins. Co.,* 197 Colo. 462, 594 P.2d 1042 (1979), as support for double recovery. As to why the court would reconsider its ruling, the trial court stated "I didn't consider those things [policy for or against double recovery] in my decision because I didn't have to worry about statutory interpretation if I didn't have the New York law and now I've got to go back and look at it again and since you've forced the issue and taken away my dodge as to procedural matters I've got to go back and do it again and face up to what you want me to decide." Plaintiff's counsel responded, "I think that's what we all want, your honor, and I would waive any procedural objections." At the end of the hearing, counsel for the plaintiff stated, "I do have a very strong reaction to evidence after the trial, however, I also understand the concept of newly discovered evidence...." The court stated that it had "accepted this evidence in the case." Plaintiff's counsel made no objection at this time.

In its decision of March 11, 1983, the trial court stated that the rights of the parties must be determined according to the laws of New York. The trial court accepted the affidavit attached to Blue Cross/Blue Shield's motion for reconsideration "as describing the applicable New York law." The court found there to be a coordination of benefits policy in New York and in order to implement the public policy of both Colorado and New York, Blue Cross/Blue Shield should have judgment against Hertz for the cost of medical care provided to the plaintiff.

On March 25, 1983, plaintiff submitted a motion to alter or amend the judgment, asking the court to enter a final judgment for purposes of appeal, but raising no substantive arguments pertaining to the March 11 judgment. Blue Cross/Blue Shield also moved the court to amend the judgment by including portions of the affidavit attached to its original motion for reconsideration into the court's findings. A hearing on these motions was held on

April 21, 1983. The court declined to include portions from the affidavit into its findings, but did finalize the judgment. At the conclusion of the hearing, plaintiff's counsel stated:

[T]he order of judgment which was entered on the date of March 11th appears to me to have taken cognizance of some things which were presented by Blue Cross/Blue Shield subsequent to October 25th that was not done formally here in open court and we therefore never had the opportunity to say, yes, we object or no we don't object and I do for the record want to state that we object to any facts which were tendered by way of affidavit or otherwise subsequent to October 25th, 1982 on two specific grounds. One, that they are hearsay and secondly that the matter came on for trial on October 25th, 1982 and October 25th was the date for the presentation of all the facts in this case.

The plaintiff appealed the trial court's decision to the court of appeals, arguing the applicability of section 10–4–709. The plaintiff also claimed that the method of presenting the New York law by affidavit was erroneous and afforded her no opportunity to object to its admissibility.

The court of appeals upheld the trial court's ruling that Hertz was responsible for the payment of PIP benefits. However, the court of appeals found that the trial court erred in entering judgment in favor of Blue Cross/Blue Shield. The court of appeals did not address the applicability of section 10–4–709. Instead, the court concluded that the October 25, 1982, proceeding was initially a motion for judgment on the pleadings, but that the introduction of matters outside the pleadings, including the testimony of Hertz's employee, converted the proceeding to one of summary judgment governed by C.R.C.P. 56, 7A C.R.S. (1973). Without citing authority, the court held that C.R.C.P. 56 did not permit supplemental affidavits to be introduced after the court entered a summary judgment. The court of appeals found that the New York law presented in the affidavit was not properly before the trial court. *Bukulmez,* 710 P.2d at 1121.

Alternatively, the court of appeals held that even if the October 25 proceeding was deemed to be a trial, the affidavit was still not admissible. Blue Cross/Blue Shield stated "new evidence" as a ground for reconsideration. The court found that one of the prerequisites to sustain a motion for new trial on the grounds of newly discovered evidence, pursuant to C.R.C.P. 59(a)(4), required that the evidence was not discoverable by the exercise of reasonable diligence before trial. The court held that the affidavit did not contain information that was not capable of being produced at the time of trial. *Bukulmez,* 710 P.2d at 1122.

II.

■ The first issue which must be addressed is whether the plaintiff waived any objection to the admission of Blue Cross/Blue Shield's affidavit which accompanied their motion for reconsideration. Objection to evidence must be made when offered. *Van Hise v. Trino,* 143 Colo. 179, 352 P.2d 284 (1960). Furthermore, by arguing the merits of Blue Cross/Blue Shield's motion for reconsideration without raising an objection to the admission of the Fortunato affidavit, the plaintiff has effectively waived any objection she may have had to this procedure. *See Lancaster v. C.F. & I. Steel Corp.,* 190 Colo. 463, 548 P.2d 914 (1976); *Cox v. Pearl Inv. Co.,* 168 Colo. 67, 450 P.2d 60 (1969) (arguing merits of defendant's motion for summary judgment without raising objection in trial court as to manner in which affirmative defense of release was asserted waived any objection to this procedure).

In the case at bar, counsel for the plaintiff clearly waived any objection to the admission of the Fortunato affidavit; first, by arguing the merits of the motion for reconsideration at the January 26, 1983, hearing; second, by stating unequivocally that procedurally the plaintiff had no objection at that hearing. In fact, the plaintiff did not object to the Fortunato affidavit until the April 21, 1983, hearing. This occurred after the trial court entered its decision of March 11, 1983, which held that

Blue Cross/Blue Shield should have judgment against Hertz, and after the plaintiff submitted a motion to alter or amend the judgment on March 25, 1983. Once the plaintiff waived her right to object to the admission of the affidavit, she was barred from asserting that objection at a later time. *Transamerica Corp. v. Merrion,* 127 Colo. 100, 255 P.2d 391 (1953). The record clearly shows the plaintiff's intention to waive objections to procedural matters at the January 26, 1983, hearing so that the court could decide "who it is Hertz ought to pay," as a matter of law.

### III.

In reversing the trial court's judgment, the court of appeals held that "the October 25, 1982, proceeding was initially a motion for judgment on the pleadings, but the introduction of matters outside the pleadings ... converted the proceeding to one of summary judgment governed by C.R.C.P. 56." *Bukulmez,* 710 P.2d at 1121.

■ A careful review of the record before us reveals that the court proceeding of October 25, 1982, was a trial before the court. C.R.C.P. 56 states in part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

C.R.C.P. 56(c), 7A C.R.S. (1973). The purpose of this rule is to further the prompt administration of justice and expedite litigation by avoiding needless trials. *Blain*

*v. Yockey,* 117 Colo. 29, 184 P.2d 1015 (1947). Summary judgment should not be granted where there appears to be any controversy concerning material facts because a summary judgment denies a litigant the right to a trial of his case. *McKinley Constr. Co. v. Dozier,* 175 Colo. 397, 487 P.2d 1335 (1971). The trial court issued a minute order setting a court trial for October 25, 1982. At that trial, the court heard testimony and accepted exhibits into evidence. The trial court erroneously labeled its order of November 15, 1982, as an "Order on Motions for Summary Judgment." However, no motion for summary judgment was pending before the court. The relief granted and denied was set forth in the plaintiff's original complaint and the complaint for intervention of Blue Cross/Blue Shield. We conclude, on the basis of the record, that the court of appeals' interpretation of the proceeding as a hearing on motions for summary judgment was erroneous; there was an evidentiary court trial. C.R.C.P. 59 governs our review of Blue Cross/Blue Shield's motion for reconsideration, which was in actuality a motion for new trial.[4]

At the time of this controversy, C.R.C.P. 59 stated:

(a) **Grounds.** A new trial may be granted to all or any of the parties, and on all or a part of the issues, after trial by jury, court, or master. *On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.* Sub-

---

4. Even if we were to agree with the court of appeals' interpretation of the proceeding as one of summary judgment governed by C.R.C.P. 56, C.R.C.P. 59 would still apply. A motion for new trial under C.R.C.P. 59(a) might be technically improper for a summary judgment, since no trial has actually occurred to which the motion can refer, however, C.R.C.P. 59(e) provides for motions seeking relief from summary judgment. C.R.C.P. 59(e) stated:

(e) **Motion to Alter or Amend a Judgment.** A motion to alter or amend the judgment may be filed but not later than fifteen days after entry of the judgment.

C.R.C.P. 59(e), 7A C.R.S. (1984). Although a motion under C.R.C.P. 59(e) is to "alter or amend," the courts have taken a flexible approach (and sensibly so) as to the scope of C.R.C.P. 59(e) and have included motions to vacate or set aside summary judgments. 6–Part 2 J. Moore, *Moore's Federal Practice* ¶ 56.26–1 (2d ed. 1986). *See Sonnenblick-Goldman Corp. v. Nowalk,* 420 F.2d 858 (3d Cir.1970); *cf. Jones v. Nelson,* 484 F.2d 1165 (10th Cir.1973) (court treated motion for new trial as motion for rehearing on the motion for summary judgment).

ject to the provisions of Rule 61 [C.R.C. P.], a new trial may be granted for any of the following causes:

(1) Any irregularity in the proceedings by which any party was prevented from having a fair trial;

(2) Misconduct of the jury;

(3) Accident or surprise, which ordinary prudence could not have guarded against;

(4) Newly discovered evidence, material for the party making the application which he could not, with reasonable diligence, have discovered and produced at the trial;

(5) Excessive or inadequate damages;

(6) Insufficiency of the evidence;

(7) Error in law.

C.R.C.P. 59, 7A C.R.S. (1984) (emphasis added).[5]

 In a court trial, the court necessarily has greater freedom in determining what its action will be on a motion for new trial, as compared to a like motion in a jury action. *See* 6A J. Moore, *Moore's Federal Practice* ¶ 59.07 (2d ed. 1986). In a court action, proper relief may be accorded by less than an actual new trial, such as taking additional testimony, the amending of findings of fact, conclusions of law, or the judgment. *Id.* The trial court has discretion in passing on the merits of a motion for new trial, and its decision should not be disturbed in the absence of abuse of discretion. *Bushner v. Bushner*, 141 Colo. 283, 348 P.2d 153 (1959). Here, the trial court expressed concern over the lack of New York law presented by the parties, and its action in accepting Blue Cross/Blue Shield's memorandum setting forth New York law, together with the Fortunato affidavit, is consistent with C.R.C.P. 59. Upon the filing of a timely motion for new trial, the trial court retains the full power to correct any and all errors committed, and may set aside an erroneous judgment. *Goodwin v. Eller*, 127 Colo. 529, 258 P.2d 493 (1953).

In the instant case, the trial court modified its judgment after the January 26, 1983, hearing, based upon the New York law that was not furnished to the court in the October 25, 1982, trial. By opening the judgment, amending its conclusions of law, and entering a new judgment, the trial court was within its discretion under C.R. C.P. 59(a).

We hold that the trial court properly considered the New York law presented in Blue Cross/Blue Shield's motion for reconsideration.

IV.

We next address whether the plaintiff should be allowed double recovery under a New York contract because the foreign corporation did not comply with the procedural requirements for coordination of benefits pursuant to section 10–4–709 of the No Fault Act. We answer in the negative based on the public policies of both Colorado and New York.

In Colorado we have held that the No Fault Act evidences a legislative intent "to allow an insured full tort recovery undiminished by the subrogation and arbitration right of his insurer, except in those cases where such a policy would result in double recovery to the insured." *Marquez v. Prudential Property & Casualty Ins. Co.*, 620 P.2d 29, 31 (Colo.1980). The No Fault Act does not abolish the right of an insurer to subrogation, but "is consistent with the principle that an insurer's right of subrogation is derived from the rights which its insured had." *Id.* at 33. "Subrogation is intended to prevent the insured from recovering twice for one injury." *Id.*

5. C.R.C.P. 59 has been amended, effective January 1, 1985, to read as follows:

(a) **Post-Trial Motions.** Within 15 days of entry of judgment as provided in C.R.C.P. 58 or such greater time as the court may allow, a party may move for post-trial relief including:

(1) A new trial of all or part of the issues;

(2) Judgment notwithstanding the verdict;

(3) Amendment of findings; or

(4) Amendment of judgment.

Motions for post-trial relief may be combined or asserted in the alternative. The motion shall state the ground asserted and the relief sought.

C.R.C.P. 59(a), 7A C.R.S. (1986).

The plaintiff's reliance on *Newton v. Nationwide Mut. Fire Ins. Co.*, 197 Colo. 462, 594 P.2d 1042 (1979), to support her contention that the No Fault Act does not prohibit double recovery is misplaced. In *Newton*, we held that a policy provision that required payments under an uninsured motorist policy to be offset by any PIP benefits paid violated public policy. We noted that PIP coverage and uninsured motorist coverage are distinct and separate contractual provisions with separate premiums and that to allow the set-off could result in an insured having to absorb loss even though he paid an extra premium for the uninsured motorist coverage. *Id.* at 466, 594 P.2d at 1044. Uninsured motorist coverage compensates for general damages different in kind from those compensable under the PIP provisions. *Id.* This is quite different from the case before us where the issue is whether the plaintiff should recover twice for the same medical benefits.

The plaintiff argues that section 10-4-709 applies to "all providers of other benefits," whether or not the provider is licensed to do business in Colorado. She contends that the General Assembly could be more specific if it intended to limit the application of section 10-4-709 to in-state providers. By way of example, the plaintiff points out that section 10-4-717 specifically states that "[e]very insurer licensed to write motor vehicle insurance in this state" shall be deemed to agree that the issue of liability for PIP reimbursement will be decided by arbitration. *See* § 10-4-717, 4 C.R.S. (1973).

■ The plaintiff's argument must fail in light of our decision in *Baumgart v. Kentucky Farm Bureau Mut. Ins. Co.*, 199 Colo. 330, 607 P.2d 1002 (1980), in which we stated:

Although we agree that the section, read alone, appears to grant a right of direct action to all insurers, it is our view that the section must be read in conjunction with the more specific provisions of section 10-4-717.... In our view, a common sense and plain reading of section 10-4-713 requires the conclusion that it was designed to provide for direct ac-

tions only where one of the parties involved is not an insurer licensed to do business in Colorado.

*Id.* at 332-33, 607 P.2d at 1003. We think a similar view must be taken of section 10-4-709. A provider of medical benefits of the type available through PIP payments, not licensed to do business in Colorado, should not be forestalled from recovery because it does not file notice with the Insurance Commissioner of Colorado.

■ The contract between the plaintiff's mother and Blue Cross/Blue Shield was entered into in the State of New York. The public policy of that state with regard to double recovery of PIP benefits is similar to our own. Applying the New York no fault statute, a New York appellate court stated:

While the purpose of the statutory scheme is to make an injured party whole, it is not designed to provide such party with a windfall. Subrogation is the principle which exists to prevent double recovery on the part of an insured and to compel the wrongdoer to bear the ultimate costs.

*Aetna Casualty & Surety Co. v. Jackowe*, 96 A.D.2d 37, 468 N.Y.S.2d 153 (1983). *See* N.Y.Ins.Law § 5101 to 5108 (1985). The policy of the State of New York is to coordinate benefits and avoid overinsurance or duplication of coverage. *Dudley v. Blue Cross*, 63 A.D.2d 813, 405 N.Y.S.2d 837 (1978). We find that under the public policies of both Colorado and New York, Blue Cross/Blue Shield are entitled to subrogation in the amount covered by PIP benefits owed to the plaintiff from Hertz.

Therefore, the judgment is reversed in part and returned to the court of appeals with directions that the trial court's order be reinstated.