Kenneth J. SHON, Plaintiff–Appellee, Cross–Appellant,

and

State Farm Mutual Automobile Insurance Company, Plaintiff–Intervenor–Appellant, Cross–Appellee,

v.

SUBARU OF AMERICA, INC., Defendant–Appellee, Cross–Appellant,

and

Leo Payne Subaru, Inc., Defendant–Appellee.

No. 87CA0062.

Colorado Court of Appeals, Div. I.

Feb. 4, 1988.

Rehearing Denied March 3, 1988.

Renner & Rodman, Paul D. Renner, John R. Rodman, Denver, for plaintiff-intervenor-appellant, cross-appellee State Farm Mut. Auto. Ins. Co.

Anderson, Campbell & Laugesen, Richard W. Laugesen, Denver, for defendant-appellee, cross-appellant Subaru of America, Inc.

Baker & Hostetler, James R. Prochnow, Denver, for plaintiff-appellee, cross-appellant Kenneth J. Shon.

CRISWELL, Judge.

The primary question presented by this appeal is whether it is the Colorado Auto Accident Reparations Act (the Colorado act), § 10–4–701 et seq., C.R.S. (1987 Repl. Vol. 4A), or its Pennsylvania counterpart, Pa.Stat.Ann. tit. 40, § 1009.101, et seq. (Purdon 1971 and Supp.1987) (the Pennsylvania act) that governs the right of an insurance carrier, which issued a complying policy under the Colorado act, to be reimbursed out of the proceeds from the settlement of the beneficiary's third-party tort claim. We conclude that the carrier's subrogation rights are governed by the Colorado act, as the trial court concluded, but that there is insufficient record evidence to determine the manner in which the Colorado act must be applied in this case. Thus, we reverse and remand for further proceedings.

State Farm Mutual Automobile Insurance Co. (State Farm) issued an insurance policy, providing personal injury protection (PIP) benefits under the Colorado act to a Colorado resident, as the owner of a motor vehicle registered in Colorado. In accordance with the Colorado act, § 10–4–711(3), C.R.S. (1987 Repl.Vol. 4A), this policy provided that, during the time that the insured operated a motor vehicle in another state whose laws required the maintenance of "insurance requirements" greater than those provided by the policy, the kinds of coverage provided by the policy and the limits of State Farm's liability would be increased to the extent required by the law of that other jurisdiction.

While a passenger in the insured motor vehicle, plaintiff, Kenneth J. Shon, who was also a Colorado resident, was injured in an accident that occurred in the State of Pennsylvania. The Pennsylvania act, § 1009.110(c)(1), provides that, if the state of the victim's domicile has a "no-fault plan," benefits shall be payable in accord-

ance with that state's plan; if there is no such plan in the state of the victim's domicile, benefits are to be paid in accordance with the laws of the state where the accident occurred. *See also* Pa.Stat.Ann. tit. 40, § 1009.201(a) (Purdon 1971) (if injury occurs in Pennsylvania, victim is entitled to benefits under Pennsylvania act).

The Colorado act mandates PIP benefits for non-related passengers only if the injuries arise out of "accidents occurring in this state." Section 10–4–707(1)(c), C.R.S. (1987 Repl.Vol. 4A). The parties concede that, because the Colorado act did not require benefits to be paid to Shon, he received the benefits provided for in the Pennsylvania act.

Under the Pennsylvania act, the carrier paying the benefits required by that act has no right of subrogation, except to the extent, if at all, that the benefits provided by it exceed the basic minimum benefits required by that act. Pa.Stat.Ann. tit. 40, § 1009.111(a)(2) (Purdon 1971). Here, State Farm paid only the minimum statutory benefits, so that, if the Pennsylvania act is applicable, it possesses no subrogation rights.

However, the Pennsylvania act, § 1009.110(c)(2), also provides that:

"The right of a victim ... to sue in tort shall be determined by the law of the state of domicile of the victim...."

After receiving a portion of the PIP benefits established by the Pennsylvania act from State Farm, Shon instituted a tort action against the defendants in the Denver District Court. State Farm was allowed to intervene, as a plaintiff, but it asserted no direct claim against any defendant. Rather, the only relief sought by its complaint was an order directing Shon to reimburse it out of any recovery against defendants that Shon might later obtain. The limited nature of the relief requested by it was confirmed by its subsequent trial data certificate.

Later, Shon and the defendants entered into a settlement agreement, whereby, in consideration of the payment to him of an undisclosed sum of money, Shon released all claims that he might have against the defendants. The agreement provided, however, that the agreement did not "include any sums belonging to or subject to any sort of claim or lien by any other entity, and that [the] agreement [did] not include, affect, or in any way prejudice any claimed subrogation right of any other entity."

Shon applied for an order dismissing his claims against defendants, as contemplated by the settlement agreement, noting, however, that dismissal of Shon's claims would not affect or prejudice any claim that State Farm might have. State Farm objected to this dismissal and insisted that it was entitled to be reimbursed out of the settlement proceeds for the PIP payments made by it to Shon. It is the trial court's order denying that request for reimbursement from which State Farm appeals.

I

■ Shon and the defendants insist that, since the benefits paid to Shon by State Farm were those mandated by the Pennsylvania act, it is that act, and not the Colorado act, that governs State Farm's subrogation rights. We disagree.

The Pennsylvania act establishes a different test for determining the litigation rights of a victim than the test that is to be employed in determining whether a victim is to receive the PIP benefits mandated by that act. Benefits are payable under that act only if the law of the victim's domicile does not have a comparable no-fault plan, *see* §§ 1009.110(c)(1) and 1009.201(a) of the Pennsylvania act, or if that law requires, as § 10–4–711(3), C.R.S. (1987 Repl.Vol. 4A) appears to require, that the benefits to be provided to a victim shall be at least equal to the minimum benefits payable under the law of the state where the injury occurs. *See Hahn v. Liberty Mutual Insurance Co.*, 336 Pa.Super. 329, 485 A.2d 830 (1984).

In contrast, the law governing the victim's litigation rights is always the law of his domicile. Section 1009.110(c)(2) of the Pennsylvania act.

In applying these two, separate tests, the Pennsylvania courts have recognized that the fact that a non-resident victim may be

entitled to receive Pennsylvania benefits does not mean that the Pennsylvania act is to be applied in any resulting third-party litigation. In the leading case of *Toter v. Knight*, 278 Pa.Super. 547, 420 A.2d 676 (1980), the collective effect of these statutory provisions were summarized as follows:

> "If the non-resident is domiciled in a state that has in effect a state no-fault plan for motor vehicle insurance, the non-resident is denied the benefits available under Pennsylvania's No–Fault Act and is remitted to the benefits available under the plan of his home state. If the non-resident is domiciled in a state that does not have in effect a state no-fault plan ... then he is entitled to the basic loss benefits provided under the Pennsylvania No–Fault Act. However, *no matter which of these rules pertains under section 110(c)(2) the nonresident always retains the tort remedies that are available under the law of his home state.*" (emphasis supplied)

Thus, the Pennsylvania courts have held that the law of the victim's domicile is determinative of the subrogation rights of a workmen's compensation carrier with respect to a Pennsylvania resident who was injured in a motor vehicle accident in Indiana. *Wiest v. Eazor Express, Inc.*, 311 Pa.Super. 128, 457 A.2d 527 (1983). Likewise, in *Pryor v. Fireman's Fund Insurance Co.*, 537 F.Supp. 971 (W.D.Pa.1982), the court ruled that if the law of the victim's domicile grants to the carrier greater subrogation rights than does the Pennsylvania act, such law is not, merely by virtue of that provision, precluded from being a "no-fault plan" under the Pennsylvania act.

We conclude, therefore, that, whether a direct reference is made to the Colorado act or whether reference is made to the Pennsylvania act, the result is the same. In either event, Shon's litigation rights and State Farm's subrogation rights are to be determined by reference to the Colorado act.

## II

The accident in which Shon was injured occurred in December 1976. At that time, § 10–4–714, C.R.S., of the Colorado act provided to Shon the right to assert a direct claim against the defendants; by § 10–4–713(1), C.R.S., it purported to authorize a direct action by State Farm against defendants; and by § 10–4–717, C.R.S., it also granted to State Farm rights to recovery by means of arbitration under certain circumstances.

In construing these provisions, the supreme court in *Marquez v. Prudential Property & Casualty Insurance Co.*, 620 P.2d 29 (Colo.1980), concluded that a subrogation provision in a PIP policy "cannot be permitted to reduce the funds to which the insured is entitled in order to obtain full compensation for his injuries." Thus, since the parties in *Marquez* stipulated that the victim's total damages equalled $30,000, and since the total proceeds received by him, both from his PIP carrier and as a result of his assertion of a third party claim, was less than that amount, the insurer was not entitled to receive any reimbursement out of the proceeds paid to the victim by the third party's liability carrier.

Later, in *Cingoranelli v. St. Paul Fire & Marine Insurance Co.*, 658 P.2d 863 (Colo.1983), the court held that (1) a victim's general release of a tortfeasor does not cause the release of any PIP claim, absent specific language to such effect, and (2) a PIP insurer is not entitled to receive reimbursement out of a victim's third-party settlement proceeds, if that settlement, in addition to the amount of PIP benefits received by him, provides to the victim an amount less than the full value of his third-party claim.

Under *Marquez* and *Cingoranelli*, State Farm's right of subrogation, and its entitlement to any portion of the third-party proceeds received by Shon, depend upon whether the total amount received by Shon exceeded the total value of his claims asserted against the defendants. If the total received by Shon from State Farm and from the third-party settlement did not exceed the total value of his third-party claims, State Farm would not be entitled to any portion of those settlement proceeds.

And, to the extent that any policy provision might purport to grant to State Farm any greater rights, that provision is unenforceable. *Marquez v. Prudential Property & Casualty Insurance Co., supra.*

■ The trial court, after declaring that it was the Colorado act that determined State Farm's subrogation rights (a conclusion with which we agree), also held that State Farm was not entitled to receive any part of the settlement proceeds. In our view, however, there is insufficient evidence contained in this record to justify this latter conclusion.

In *Marquez,* the parties stipulated to the total damages suffered by the victim. In *Cingoranelli,* there was evidence which, if credited, would have supported the finding that the total proceeds received by plaintiff was less than the value of his third-party claim. In this case, however, not only was no evidence submitted as to the value of Shon's claim against the defendants, but he and the defendants refused to disclose the amount received by him pursuant to the settlement agreement. Absent evidence upon these two subjects, there can be no basis for any conclusion as to whether Shon's receipt of the settlement proceeds would have provided him with "duplicating" payments under *Marquez,* so as to entitle State Farm to be reimbursed out of those proceeds to the extent of any such duplication. To this extent, therefore, the trial court erred in entering its decree.

### III

■ Finally, State Farm claims that Shon's execution of the settlement agreement caused it to be released from any obligation to continue to make payment of PIP benefits to Shon. We disagree and consider the supreme court's decision in *Cingoranelli v. St. Paul Fire & Marine Insurance Co., supra,* to be dispositive of this assertion.

The judgment denying State Farm's claim for reimbursement is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views contained herein.

PIERCE and TURSI, JJ., concur.