**Joann RUPPEL and Richard Ruppel,**
**Plaintiffs–Appellants,**

**v.**

**LIFE INVESTORS INSURANCE**
**COMPANY OF AMERICA,**
**Defendant–Appellee.**

**No. 96CA1805.**

Colorado Court of Appeals,
Div. II.

March 19, 1998.

As Modified on Denial of Rehearing
June 4, 1998.

Certiorari Denied Jan. 11, 1999.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1997.

Fogel Keating Wagner Polidori Shafner Struthers & Heron, P.C., David R. Struthers, Denver, for Plaintiffs–Appellants.

Sherman & Howard, L.L.C., Leanne B. DeVos, Christopher R. Mosely, Denver, for Defendant–Appellee.

Opinion by Judge CRISWELL.

Plaintiffs, Joann and Richard Ruppel (the insureds), appeal from a judgment entered in favor of defendant, Life Investors Insurance Company of America (Life Investors). The trial court's judgment was based upon its conclusion that the requirements of § 10–4–709, C.R.S.1997, were not intended to benefit insureds, but were meant merely to accommodate the interests of two or more insurance carriers who have issued insurance policies insuring against the same risk. Because we reach the opposite conclusion, we reverse and remand with directions to enter judgment against Life Investors for all amounts that would be due to plaintiffs under its policy if no other policy of insurance had been in effect at the time of the loss.

The facts at issue were the subject of a written stipulation between the parties. That stipulation established that plaintiff Joann Ruppel (Ms. Ruppel) was in an automobile accident that caused her serious injuries. At the time of that accident, there were two insurance policies in effect covering the risk. One, issued by National Farmers Union Property & Casualty Company (National Farmers) under the Colorado Auto Accident Reparations Act, § 10–4–701, et seq., C.R.S.1997 (No–Fault Act), provided personal injury protection (PIP) benefits to Ms. Ruppel up to a limit of $100,000. The other, a group medical and hospitalization insurance policy issued by Life Investors, also had limits of $1,000,000.

The injuries sustained by Ms. Ruppel required the expenditure of some $156,000 for medical treatment. National Farmers treated its policy as primary, and it paid $100,000, the limits of its policy, toward these expenses. No dispute has arisen between National Farmers and the insureds with respect to National Farmers' liability under its policy, and that carrier has not been joined as a party to this litigation.

Life Investors paid the remaining medical expenses. It refused to pay any further sums, asserting that, under the "coordination of benefits" provisions of its policy, it was liable only for that portion of Ms. Ruppel's actual expenses that had not been paid by National Farmers.

The insureds then instituted this action, contending that, even though all of their expenses had been paid, because Life Investors had failed to comply with the requirements of § 10–4–709, its policy's provisions relating to the coordination of benefits were unenforceable. Hence, they asserted, Life Investors was liable for the full amount of the actual medical expenses incurred by Ms. Ruppel, up to the limits of its policy, irrespective of the existence of National Farmers' policy or that carrier's payment of some of those expenses. They sought a judgment in the amount of some $100,000, being the difference between plaintiffs' total expenses and the amount already paid by Life Investors.

In denying the insureds' claim, the trial court determined that the declaration in § 10–4–709(1), C.R.S.1997, that the statute's purpose is to prevent "duplication of benefits" and the mandate in § 10–4–704(4), C.R.S.1997, that a failure to comply with either § 10–4–709(2) C.R.S.1997, or § 10–4–709(3), C.R.S.1997, will render any coordination of benefits "unenforceable," caused the latter provision to be "ambiguous." It then determined that, as between National Farmers, the PIP carrier here, and Life Investors, § 10–4–707 required that the PIP coverage be treated as "primary," but only up to the statutory minimum of $50,000 (rather than the policy's limits of $100,000). Life Investors' failure to comply with §§ 10–4–709(2) and 10–4–709(3), then, required it to pay $100,000, and the PIP carrier would then be responsible for any additional medical expenses until the remaining portion of that policy's limits were expended.

The statute at issue, § 10–4–709, is a part of the No–Fault Act. That Act requires every owner or operator of a motor vehicle to obtain a policy of insurance providing PIP benefits to specified individuals for bodily injuries that arise out of the use or maintenance of a motor vehicle. Sections 10–4–705, 10–4–706, 10–4–706.5, C.R.S.1997.

■ The No–Fault Act has, as one of its purposes, the prevention of duplicate payments of compensation for the same injury. *See Blue Cross v. Bukulmez,* 736 P.2d 834 (Colo.1987). It seeks to accomplish this purpose in two ways.

First, § 10–4–707, C.R.S.1997, "coordinates," or prioritizes, the payment of benefits as between two or more PIP policies. If two or more such policies cover the same injury, this statute provides, generally, but with certain exceptions, that "primary coverage" shall be provided by the policy covering the motor vehicle itself, § 10–4–707(3), C.R.S. 1997. *See* §§ 10–4–707(4) and 10–4–707(5), C.R.S.1997.

Likewise, this statute prioritizes payment of benefits between a PIP policy and a policy providing workers' compensation benefits in those instances in which such a latter policy may be applicable. *See* § 10–4–707(5), C.R.S.1997.

However, all of the payment priorities created by § 10–4–707 are applicable only to those policies that provide the PIP benefits mandated by the Act, with the single exception of policies that provide workers' compensation benefits. Section 10–4–707 does not attempt to prioritize or to coordinate the payment of benefits payable under other coverages, such as uninsured motorists coverage, or under other policies, such as individual or group policies providing medical or hospitalization benefits, which might also cover injuries sustained in an automobile accident.

Rather, another section of the Act, § 10–4–709, is intended to require the "coordination of benefits" between PIP policies and other policies providing similar benefits.

That statute provides that, "[t]o avoid duplication of benefits available through other insurance," a carrier providing such other insurance, such as Life Investors, is required to "coordinate" the benefits payable under that other insurance with any PIP benefits available. Section 10–4–709(1), C.R.S.1997.

This statute, however, establishes several important requirements and caveats.

Any other carrier whose policy benefits have been coordinated with the PIP benefits available under the No–Fault Act must file with the commissioner of insurance evidence "that such coordination has resulted in an equitable *reduction* in premiums or costs to the *beneficiaries*" of such benefits. Section 10–4–709(2), C.R.S.1997 (emphasis supplied).

In addition, any such coordinating policy must "state in clear and conspicuous language" that the benefits under that policy have been "coordinated" with the benefits mandated by the Act. Section 10–4–709(3), C.R.S.1997.

Finally, if that other carrier does not comply with *either* of these requirements, "any coordination of benefits" by that carrier is rendered "unenforceable." Section 10–4–709(4), C.R.S.1997.

Here, Life Investors had issued a group policy providing medical and hospitalization benefits, and both the insureds were benefi-

ciaries under its terms. That policy contained a section entitled "Coordination of Benefits" which provided, in essence, that the benefits otherwise due under that policy "in the absence of this provision" were to be reduced to the extent necessary so that the total of such "reduced benefits" and all benefits payable under all other policies providing similar benefits would not exceed the total medical expenses incurred by the beneficiaries.

However, based upon the parties' written stipulation and other competent evidence, the trial court found that Life Investors had not complied with either § 10–4–709(2) or § 10–4–709(3). That is, it had not demonstrated to the insurance commissioner that the inclusion of this provision in its policy had reduced its cost or premium and its policy did not contain clear and conspicuous language that its benefits had been coordinated with the benefits required by the Act.

Relying upon § 10–4–709(4)'s declaration that noncompliance with the statute's requirements would render a coordination provision "unenforceable" and upon the policy statement that, "in the absence of this [coordination of benefits] provision," no reduction in benefits would occur, the insureds sought to obtain a judgment for the full amount of their medical expenses, even though a portion of them had already been paid by their PIP carrier.

Before us, Life Investors supports the trial court's construction based upon its assertion that the prevention of "double recovery" is a principal purpose of the No Fault Act. Our consideration of the specific statute at issue here, however, convinces us that the trial court's construction of that statute was faulty. That statute, on its face, prevents Life Investors from relying upon its policy provisions for a coordination of benefits to reduce the benefits otherwise due to the insureds under that policy. Contrary to the trial court's reading of § 10–4–709, we can detect no ambiguity in its terms.

■  Section 10–4–709(1) requires every provider of benefits, other than PIP benefits, to coordinate the benefits provided by its policies with those provided by any applicable PIP policy. However, §§ 10–4–709(2)

and 10–4–709(3) impose two requirements upon any such carrier when it adopts such provisions. And, *both* those requirements—that the carrier demonstrate that such provisions will reduce the cost of the non-PIP policy and that there be clear notice given that the policy contains such provisions—are designed to be of aid to the *beneficiaries* of that policy.

A PIP carrier has no interest in the cost of the non-PIP policy nor in assuring that its beneficiaries know its contents. Yet, the interpretation of the statute urged by Life Investors would mean that the violation of these statutes, which are designed to aid the beneficiaries of its non-PIP policy, would have no impact upon the rights of those beneficiaries, but would inure only to the benefit of the PIP carrier—a party that has no contractual or other legally enforceable interest in the non-PIP policy and that has no economic interest of any type in the requirements mandated by that statute.

■  Indeed, the PIP carrier could not "enforce" any provision of Life Investor's policy, except to the extent that some principles of contractual or equitable subrogation would allow that carrier to assert, derivatively, the rights of the beneficiaries. *See Unigard Mutual Insurance Co. v. Mission Insurance Co.,* 907 P.2d 94 (Colo.App.1994) (a claim by one carrier against another for payment of benefits under a policy issued to a mutual insured must be based upon either a subrogation provision in its policy or a judicial recognition of a right to equitable subrogation).

Hence, the only rational meaning of § 10–4–709(4)'s mandate with respect to the coordination of benefits being "unenforceable" is that Life Investors cannot "enforce" those provisions against those persons, here the insureds, who could sue under that policy. And, if that provision is unenforceable against those parties, the existence of a PIP policy is irrelevant to the question of the amount of benefits due to them under the Life Investors policy.

This conclusion is consistent with that reached by other courts under similar circumstances. In *Siller v. Employers Insurance,* 123 Mich.App. 140, 333 N.W.2d 197

(1983), for example, a statute required disability insurance policies containing a coordination of benefits provision to contain specific language upon the subject. The carrier's policy in that case varied from the required statutory language. Such variance led the Michigan court to reach the following conclusion:

> We conclude that the defendant's failure to include in its insurance policy the explicit statutory language pertaining to coordination of benefits clauses renders the policy's coordination of benefits clause invalid.

> In light of our conclusion that the coordination of benefits clause in the defendant's insurance policy is invalid under the uniform disability insurance policy provisions law, we hold that the defendant is not entitled to reduce the benefits owed the plaintiff under its policy by the amount the plaintiff received under her parents' insurance policy. Plaintiff is entitled to collect the full benefits payable pursuant to the provisions of the defendant's disability insurance policy.

*Siller v. Employers Insurance, supra,* 333 N.W.2d at 198. *See also Torres v. Farmers Insurance Exchange,* 106 Nev. 340, 793 P.2d 839 (1990) (failure to comply with "clear language" requirement of "anti-stacking" statute rendered anti-stacking provision of policy unenforceable against insured); *Steppling v. Pennsylvania Manufacturers' Ass'n Insurance Co.,* 328 Pa.Super. 419, 477 A.2d 515 (1984) (failure of insurer to require insured to make election to treat policy benefits as excess and to reduce premium, as required by statute, renders excess provisions unenforceable against insured).

 We conclude, therefore, that Life Investor's failure to comply with the requirements of §§ 10–4–709(2) and 10–4–709(3) renders its policy's coordination of benefits provision unenforceable against the insureds. Hence, the insureds are entitled to recover from Life Investors that amount of benefits for which it would be liable "in the absence of this provision."

In reaching this conclusion, we are mindful of the No–Fault Act's general purpose to prevent the payment of duplicative benefits. However, that purpose has been implemented by specific statutory language. Section 10–4–707 is inapplicable to this controversy, and Life Investors' failure to comply with § 10–4–709 causes its policy to fall within a clearly expressed exception to that general purpose.

The judgment of the trial court is reversed, and the cause is remanded to that court for the entry of a judgment consistent with the views set forth in this opinion.

DAVIDSON and ROTHENBERG, JJ., concur.